Donald SPARROW *v.* ARKANSAS DEPARTMENT of
HEALTH & HUMAN SERVICES, et al.

CA 07-555                    272 S.W.3d 846

Court of Appeals of Arkansas
Opinion delivered January 30, 2008

*Paul N. Ford*, for appellant.

*Gray Allen Turner*, Office of Chief Counsel, for appellee.

*Carla Rogers Nadzam* attorney ad litem, for the minor child.

ROBERT J. GLADWIN, Judge. Donald Sparrow brings this appeal from the order of the Craighead County Circuit Court finding his daughter K.S. dependent-neglected, based on allegations that he sexually abused K.S. He raises three points for reversal, contending that the circuit court erred in not dismissing the action on the basis that collateral estoppel barred the present action

where the issue of abuse had been litigated in another court; that the circuit court erred in denying him the right to confront K.S. by directing him to sit outside her view during her testimony; and that the circuit court erred in excluding, as hearsay testimony, a statement made by K.S. None of these points has merit. Therefore, we affirm.

Sparrow and his former wife, appellee Heather Scott, are the parents of K.S., born July 1, 1998. Sparrow and Scott were divorced in Lafayette County in 2000. Custody of K.S. was awarded to Scott, and Sparrow was afforded visitation. The docket sheet from the divorce court shows that there has been extensive post-divorce litigation.

The parents were before the divorce court in Lafayette County on August 28, 2006, for a hearing on Sparrow's motion for visitation. According to the order from that hearing, the court found "no credible evidence of child abuse" by Sparrow towards K.S. and ordered that visitation resume, to be supervised by K.S.'s paternal grandmother, Linda Sparrow.

According to an affidavit submitted in support of its petition, appellee Arkansas Department of Health and Human Services ("DHS") received a report on May 8, 2006, that K.S. was being sexually abused by Sparrow. The report was investigated and found to be true.

In September 2006, DHS received another report concerning K.S., alleging that, according to an order issued by the Lafayette County court, Sparrow's visits with K.S. were to be supervised by his parents but that they were failing to do so. The report also noted that K.S. was having psychosomatic symptoms such as nightmares and wetting the bed and that these manifestations began occurring since her last visit with Sparrow. The affidavit went on to note that K.S. reported that her father was physically violent toward her and that she did not want to see Sparrow. The affidavit further noted that, during an interview with K.S.'s school principal, Pam Clark, she reported that K.S. was sexually acting out.

On December 14, 2006, DHS filed a petition in the Craighead County Circuit Court, alleging that K.S. was dependent-neglected as a result of sexual abuse. The petition sought an order to provide safeguards for K.S.'s protection. The circuit court entered an *ex parte* order finding that K.S. was at imminent risk of being sexually abused by her father during visitation and ordering

that Sparrow have only supervised visitation at DHS. The court also set a probable-cause hearing for December 21, 2006.

At the probable-cause hearing, K.S. testified that she was afraid of her father because he had hurt her and had threatened her not to tell anybody about the abuse. She also testified that her father had touched her privates. She also indicated that there were times when she was left alone with her father and that she is sometimes afraid to be left alone with him. Sparrow did not attend the hearing in person; however, his attorney did. Counsel made a motion to dismiss the action on the basis of lack of jurisdiction and res judicata, which was overruled.

By order entered on January 18, 2007, the circuit court found probable cause to enter the *ex parte* order. The court ordered the termination of all visitation between K.S. and Sparrow unless supervised by DHS. The court also ordered Sparrow to obtain and follow the recommendations of a sexual-risk assessment, as well as to have a psychological evaluation. The circuit court later amended the probable-cause order to reflect that there would be no contact between K.S. and her father.

Sparrow and Scott returned to the Lafayette County divorce court for a hearing on January 25, 2007, on cross motions for contempt. At that hearing, K.S. testified that she loved her parents, adding that it was hard to testify with them watching her. K.S. testified that her father had not said or done anything bad to her. She also said that her mother never told her to make any of the allegations, except to tell the truth. K.S. denied being afraid of her father. K.S. also denied that Sparrow had done anything inappropriate to her while she was bathing, other than to scrub her down, which she said she could do herself. The Lafayette County court again found no credible evidence of child abuse, noting that K.S.'s testimony "clearly refutes all allegations of child abuse." The court held *Scott* in contempt for not allowing visitation with Sparrow and ordered her to pay for a transcript of K.S.'s testimony, as well as attorney's fees for Sparrow's attorney. The court ordered supervised visitation to resume.

The adjudication hearing in the present case was held beginning on February 27, 2007. Sparrow made a motion to dismiss the action, based on a lack of jurisdiction and on collateral estoppel. He argued that DHS was precluded from bringing the present dependency-neglect action because the issue of K.S.'s having been abused had been litigated in the Lafayette County

divorce action. The circuit court denied the motion to dismiss, finding that the two courts addressed separate issues: the Lafayette County court addressed issues concerning contempt, while the Craighead County court addressed the dependency-neglect issue.

K.S. testified that her father had touched her private parts with both his finger and with a Q-tip. She also said that there were instances where she was left alone with her father. K.S testified that her testimony in the Lafayette County court was not truthful in that she did not tell the court what her father had done to her or that he had threatened her. She explained that she did not tell the truth because her father was making faces at her and she "just freaked out." She also said that she wanted a "real supervisor" to watch over her because, otherwise, bad things would happen to her. On cross-examination, K.S. denied that she had been coached by her mother to make the accusations against her father. K.S. was also asked about whether she had practiced her testimony with the attorney ad litem or DHS social workers.

Sparrow testified that he had never abused K.S. in any manner. He also denied threatening K.S. or making faces at her during her testimony.

The circuit court issued a letter opinion on March 26, 2007, finding that K.S. was dependent-neglected and that it was in her best interests to restrict her visitation with Sparrow. The court noted that, except for her testimony in the Lafayette County court, K.S. had been consistent in her sexual-abuse allegations to doctors, social workers, and personnel at her school and before the circuit court in the present action. The court also found credible K.S.'s testimony that she testified falsely in the Lafayette County court because her father was present and making faces at her. The court noted that it had to admonish Sparrow for making hand and facial gestures in response to the testimony of witnesses or the questions from the attorneys. Sparrow was found to be "vague, reluctant and disingenuous" in his testimony. The court found that there was no evidence that Scott had coached K.S. to make false allegations against Sparrow. As a result of the finding that K.S. was dependent-neglected, the circuit court terminated all visitation between K.S. and Sparrow. An order memorializing the court's findings was entered on April 4, 2007. Sparrow filed a timely notice of appeal. He now raises three points for reversal.

In his first point, Sparrow, relying on *Arkansas Department of Human Services v. Dearman*, 40 Ark. App. 63, 842 S.W.2d 449 (1992), argues that the circuit court erred in denying his motion to

dismiss because the doctrine of issue preclusion bars the relitigation of issues of law actually litigated by parties in the first suit. In other words, Sparrow is arguing that DHS is precluded from bringing the present action because the issue of his abusing K.S. was litigated in the Lafayette County divorce court and that court found no evidence of abuse.

We agree that *Dearman* is factually similar to the present case. However, we find that it is not controlling under the circumstances of this case. In *Dearman*, the custodial father had filed a petition for contempt against the mother for failing to return the child from visitation. The mother filed a counterclaim for a change of custody, alleging that the father had sexually abused the child. The chancellor found the mother in contempt and dismissed her counterclaim. Three weeks later, DHS brought an action for emergency custody of the child. A DHS caseworker testified that the allegations of abuse on which its petition was based were the same allegations in the earlier action. This court held that DHS was collaterally estopped from relitigating this issue due to the previous decision. This court set out the elements of collateral estoppel as follows: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment.

We hold that Sparrow has failed in his burden of proving that the issues in the two cases were the same because he has failed to provide complete transcripts of both of the hearings in Lafayette County where the allegations of sexual abuse were raised. *See Fariss v. State*, 303 Ark. 541, 798 S.W.2d 103 (1990). In *Dearman*, there was testimony that the allegations in both cases were the same. Here, there is no such testimony to establish whether the elements of estoppel have been met, only the partial transcript of K.S.'s testimony.[1] This factor serves to distinguish the present case from *Dearman*. We do not know whether the specific allegations of abuse were the same in both cases or if there were additional instances of abuse about which K.S. was not questioned. It was Sparrow's burden to prove that the allegations were the same and that they had been fully litigated in Lafayette County.

---

[1] We note that K.S.'s therapist, Matthew Coven, testified that he testified in the Lafayette County court, but he could not recall what was asked of him in that proceeding.

*Fariss, supra.* Therefore, the circuit court did not err in denying Sparrow's motion to dismiss on the basis of collateral estoppel.

■ Sparrow's second point addresses the circuit court's requirement that, during K.S.'s testimony, Sparrow be seated outside of her view. Sparrow asserts that this was a violation of his right of confrontation. We cannot address this issue because it is not properly preserved for our review.

At the hearing, Sparrow's objection was that "there's no court authority. I mean, a party's entitled to have, to be present in a normal proceeding in normal fashions." Nowhere does he mention his right to confront K.S. It is well settled that a party cannot change the grounds for an objection on appeal but is bound on appeal by the scope and nature of the objections as presented at trial. *Foundation Telecomm. v. Moe Studio,* 341 Ark. 231, 16 S.W.3d 531 (2000). Further, Sparrow has failed to cite any authority to support his argument that a criminal defendant's Sixth Amendment confrontation rights apply in dependency-neglect cases. Assignments of error that are unsupported by convincing argument or authority will not be considered on appeal unless it is apparent without further research that they are well taken. *Israel v. Oskey,* 92 Ark. App. 192, 212 S.W.3d 45 (2005).

In his third point, Sparrow argues that the circuit court erred in excluding testimony concerning a statement K.S. made because the statement fell within an exception to the hearsay rule. At the adjudication hearing, Linda Sparrow was asked on direct examination whether she had heard K.S. deny any sexual allegation. She testified that "[K.S.] told her dad that she knew why she wasn't able to come." After a hearsay objection was sustained, Sparrow proffered the rest of K.S.'s statement as follows: "[K.S.] said further she doesn't understand why her mother is saying these things to people."

According to Sparrow, this testimony was admissible as an exception to the hearsay rule because it related to K.S.'s then-existing mental, emotional, or physical condition. *See* Ark. R. Evid. 803(3).[2] This court reviews evidentiary errors under an abuse-of-discretion standard. *See Arkansas Dep't of Human Servs. v. Huff,* 347 Ark. 553, 65 S.W.3d 880 (2002). The circuit court has broad discretion in its evidentiary rulings; hence, the circuit

---

[2] Rule 803(3) provides, in pertinent part, as follows:

court's findings will not be disturbed on appeal unless there has been a manifest abuse of discretion. *See id.* However, the fact that a piece of evidence falls within an exception to the rule against hearsay does not equate to automatic admissibility. *Id.*; *Lovell v. Beavers*, 336 Ark. 551, 987 S.W.2d 660 (1999).

We need not decide whether the statement at issue does or does not fall within the exception because it was subject to being excluded as cumulative to other statements made by K.S. that Sparrow did not abuse her. Sparrow wanted to test K.S.'s credibility by exploring other instances where she had denied that he had abused her. It is not error to exclude additional, merely cumulative, evidence with regard to the fact that K.S. had made earlier statements that Sparrow had not abused her. *McMillan v. State*, 229 Ark. 249, 314 S.W.2d 483 (1958); *Edwards v. State*, 40 Ark. App. 114, 842 S.W.2d 459 (1992). That was the predicate question leading to the testimony Sparrow sought to introduce through his mother's testimony — that K.S. had made statements denying that Sparrow had abused her. Therefore, the statement at issue was cumulative to those other statements and could be excluded under Ark. R. Evid. 403.

Affirmed.

PITTMAN, C.J., and BAKER, J., agree.

---

Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health. . . .