2009 Ark. App. 575

**Maria Torres VASQUEZ, Appellant,**

v.

**ARKANSAS DEPARTMENT OF HU-MAN SERVICES, and Minor Children, Appellees.**

**No. CA 09–233.**

Court of Appeals of Arkansas.

Sept. 9, 2009.

Maria Torres Vasquez, pro se.

No response.

DAVID M. GLOVER, Judge.

This is a no-merit appeal from the circuit court's order terminating Maria Torres Vasquez's parental rights to five of her daughters, V.W., born April 14, 1996; L.W.1, born February 3, 2000; L.W.4, born January 27, 2003; B.V., born June 3, 2005; and M.V., born June 3, 2005; and her sons, L.W.2, born December 14, 2000; and L.W.3, born January 1, 2002. Appellant's attorney has filed a motion to withdraw pursuant to *Linker–Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), asserting that there are no issues of arguable merit to support the appeal. Under the recent revision to Rule 6–9(i)(1) of the Arkansas Rules of the Supreme Court and Court of Appeals, counsel's motion is accompanied by an abstract, addendum, and brief listing all adverse rulings that were made at the termination hearing and explaining why there is no meritorious ground for reversal, including a discussion of the sufficiency of the evidence to support the termination order. *See In re Rules of the Supreme Court and Court of Appeals, Rules 6–9 & 6–10*, 374 Ark. App'x 576 (2008). The clerk of this court sent a copy of counsel's motion and brief to appellant, informing her that she had the right to file *pro se* points for reversal. *See* Ark. Sup. Ct. R. 6–9(i)(3). Appellant filed *pro se* points for reversal on May 11, 2009, and additional points on May 15, 2009. After a full examination of the record, we conclude that an appeal in this case would be wholly without merit. We therefore affirm the circuit court's termination of Vasquez's parental rights, and we grant her attorney's motion to withdraw.

This proceeding began when appellant's four-year-old stepson, J.F., died because of a subdural hematoma caused by blunt-force trauma to his head. Appellant's husband, Belton Vasquez, was J.F.'s father. Appellant and Mr. Vasquez were not living together at the time of J.F.'s death because, in September 2006, appellant learned that he had raped V.W. Appellant was, however, babysitting two of his children (J.F. and a little girl) by other women. J.F. had been in appellant's care for a couple of days when she took him to the hospital on December 11, 2006. Before J.F. died that night, appellant disappeared with her children to Texas, where her mother lived. DHS placed a seventy-two-hour hold on the children on December 12, 2006. Texas's child-protective services then took custody of the children and returned them to Arkansas. The Sebastian

County Circuit Court entered an order for emergency custody on December 15, 2006, and an order finding probable cause on December 19, 2006.

The adjudication hearing was held on February 2, 2007. In the resulting order, the court found the children dependent-neglected because of environmental neglect and failure to protect and set reunification as the goal. The court noted that DHS had provided numerous services to this family in other cases in the past and that an investigation into J.F.'s death was pending. The court ordered appellant to obtain and maintain stable and appropriate housing, employment, income, and transportation, and to complete parenting classes. It directed her to submit to a drug-and-alcohol assessment and a psychological evaluation and to follow recommendations. Appellant was evaluated by a psychologist on March 26, 2007. Dr. Robert Spray Jr. diagnosed her with major depressive episode, cannabis abuse (in long-term remission), psychological factors affecting subjective experience of symptoms related to lupus, and a personality disorder with borderline and histrionic features. Dr. Spray noted that appellant was evasive about the circumstances surrounding the death of J.F. and that she showed no evidence of grief.

The court held a review hearing on June 19, 2007. It continued the goal of reunification, and noted that the homicide investigation of J.F.'s death was still pending and that appellant had completed parenting classes.

The court held a permanency-planning hearing on November 27, 2007, and changed the goal to termination and adoption. The court stated that, after Mr. Vasquez was arrested for molesting V.W., he pled guilty to lewd molestation and was serving a twelve-year prison sentence, and that appellant had been arrested on September 25, 2007, and was incarcerated on a charge of second-degree murder for causing J.F.'s death. It also found that, before appellant's arrest, she did not have stable and appropriate housing, income, or transportation; had not submitted to a drug-and-alcohol assessment; and had not attended counseling.

DHS filed a petition for termination on January 25, 2008, alleging that appellant was "virtually homeless throughout the case," and did not have sufficient income or reliable transportation. DHS also stated that she had not submitted to a drug-and-alcohol assessment; that she was pregnant with her ninth child;[1] and that she had lived with various acquaintances, in shelters, and in a vehicle. DHS stated that, during its long history with appellant, it had made numerous attempts to provide her with services. Appellant denied grounds and reasonable reunification efforts and asked for additional time. On July 9, 2008, appellant pled guilty to manslaughter, and the court sentenced her to 120 months in prison.

The termination hearing was held on December 1, 2008.[2] DHS called appellant; Robbie McKay, the case worker; and Dr. David Dias, who treated J.F. in the emergency room, as witnesses. Appellant presented the testimony of the children's former pediatrician, her former landlord, her sister, and her mother. In the termination order, the trial court noted appellant's lengthy history with DHS and made the following findings:

---

1. The child was born on January 22, 2008, and is currently in the care of appellant's sister.

2. Although appellant's former husband, Lawrence Waller, and Mr. Vasquez were also part of this proceeding, they are not involved in this appeal.

a) the juveniles have been found to be dependent/neglected and have been out of the custody of the parents for well over twelve (12) consecutive months. In fact, they have been in foster care for two (2) years;

. . . .

c) the court also finds aggravated circumstances with regard to the mother, Maria Vasquez. She admitted to knowledge that Belton Vasquez was molesting V.W., and further admitted that she did not notify any law enforcement or child protection agencies nor did she seek medical or psychological help for V.W. She is in fact still married to Belton Vasquez and had voluntary sexual relations with him after learning of the assault. She became pregnant by him in May of 2007, eight (8) months after learning of his abuse of V.W.

d) the court finds further aggravating circumstances with regard to the mother with regard to the death of her four (4) year old step-son, J.F. J.F. died on December 11, 2006, as a result of blunt-force trauma to the head. On July 9, 2008, Maria Vasquez entered a plea of "guilty" to the offense of "manslaughter," a class "C" felony. She was sentenced to and is currently serving a sentence of ten (10) years in prison. She admitted during the criminal proceedings to causing the death of J.F.;

e) the mother further admitted to knowledge that her oldest child, who is now 19 and has left care, was molested by Lawrence Waller during the time they were together while that child was a minor.

The court found that it would create a substantial risk of harm, both physical and psychological, to return any of the children to appellant and that the children were adoptable. It stated that appellant had been unwilling or unable to rehabilitate herself or her circumstances to the extent that a child could be safely returned to her, and that there was no likelihood that she would comply if given additional time. Appellant filed a timely notice of appeal.

We conclude that an appeal from the termination decision would be wholly without merit. Pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(A) (Repl.2008), an order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parent. The harm referred to in the termination statute is "potential" harm; the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark.App. 337, 285 S.W.3d 277 (2008). In addition, the proof must establish at least one of several statutory grounds. Ark.Code Ann. § 9–27–341(b)(3)(B) (Repl.2008).

DHS presented evidence that the children, even though they have some problems, are likely to be adopted. Ms. McKay testified that the twins' foster family wants to adopt them, and that DHS has identified three families as possibilities to adopt the other children. The evidence also supports a finding that returning the children to appellant held potential harm. That evidence also supports grounds for termination and is discussed below. Termination was also proven to be in the children's best interests because they had already been in foster care for twenty-four months and would be harmed by the uncertainty and lack of permanency inherent in continuing in foster care indefinitely while their mother is in prison. *See Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001).

For grounds, the trial court found that the children had been adjudicated by the court to be dependent-neglected and had continued out of appellant's custody for twenty-four months and, despite a meaningful effort by the department to rehabilitate appellant and correct the conditions that caused removal, those conditions had not been remedied. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(*a* ). DHS established this ground. At the time of the termination hearing, the children had been in custody for twenty-four months. Appellant was in prison and would not be eligible for parole until January 27, 2010. The evidence discussed below also demonstrated that appellant did not correct the conditions that caused the children's removal from her custody.

The court also found aggravated circumstances in these respects: appellant's guilty plea to manslaughter in the death of J.F.; her failure to report the sexual abuse of V.W. by Mr. Vasquez; her failure to obtain medical or psychological help for V.W. after the abuse; and appellant's continuing to have sexual relations with Mr. Vasquez (which resulted in pregnancy) after she learned of V.W.'s abuse. The trial court added that appellant's oldest daughter, P.T., had been sexually abused by Lawrence Waller, the father of appellant's five oldest children in custody.[3] Appellant admitted that Mr. Waller had raped P.T. The definition of "aggravated circumstances" includes "[a] juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification." *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(ix)(*a* )(*3* )(*B* )(*i* ).

The trial court's finding of aggravated circumstances was more than sufficiently supported by the evidence. Even though appellant pled guilty to manslaughter for causing J.F.'s death, after a plea hearing at which she was represented by counsel, appellant claimed at trial that she did not "feel like what happened" to J.F. was her fault. A parent's failure to take such responsibility supports a finding that the behavior that caused the removal of the children has not been remedied. *See Sparkman v. Ark. Dep't of Human Servs.*, 96 Ark.App. 363, 242 S.W.3d 282 (2006). In fact, appellant testified that J.F., whom she had been babysitting for a couple of days, was "doing fine" only one hour before she found him unconscious and shaking, with labored breathing. She said that she thought Mr. Vasquez had injured J.F. on Friday, December 8, the last day that he and J.F. were together before his death (on Monday, December 11). Dr. Dias, however, testified that, considering the large hematoma J.F. suffered, it would not have been possible for him to appear normal only one hour before the episode. He stated that, with that degree of blood on J.F.'s brain, he would have had a "horrible" headache and would have been in extreme pain. Dr. Dias said that J.F. would have also experienced nausea, vomiting, dizziness, and confusion, and that the injury probably occurred between six and twenty-four hours, at most, before J.F. died. Along with the other evidence of record, Dr. Dias's testimony established that appellant caused J.F.'s death, and that she ignored his distress. Appellant's behavior is especially chilling in light of her admission that she locked him in his room the night before he died.

**3.** P.T. is not a part of this appeal because she attained the age of eighteen before the termination hearing.

Further, appellant failed to protect her children from abuse. She admitted that she learned in September 2006 that Mr. Vasquez had raped V.W., who was ten years old; that she did not report the abuse to the police or DHS; that she did not obtain medical attention or counseling for V.W.; that she had sex with Mr. Vasquez in April 2007, after she learned of his abuse of V.W.; and that Mr. Waller had raped her oldest daughter, P.T., when she was a minor. A parent has a duty to protect a child and can be found to be unfit even though she did not directly cause her child's injury; a parent must take affirmative steps to protect her children from harm. *See Sparkman, supra; Todd v. Ark. Dep't of Human Servs.*, 85 Ark.App. 174, 151 S.W.3d 315 (2004); *Wright v. Arkansas Dep't of Human Servs.*, 83 Ark. App. 1, 115 S.W.3d 332 (2003); *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark.App. 364, 43 S.W.3d 196 (2001); *Jones v. Jones*, 13 Ark.App. 102, 680 S.W.2d 118 (1984). It is true that appellant partially complied with the case plan and court orders. Nevertheless, there was no evidence that she corrected the underlying problems that led to the children's abuse and neglect. A parent's rights may be terminated even though she is in partial compliance with the case plan. *Chase v. Ark. Dep't of Human Servs.*, 86 Ark.App. 237, 184 S.W.3d 453 (2004). Even full completion of a case plan does not guarantee the defeat of a petition to terminate parental rights. *Wright, supra.* What matters is whether completion of the case plan achieved the intended result of making the parent capable of caring for the child. *Id.* With these considerations, no meritorious argument could be made that the circuit court erred in terminating Vasquez's parental rights.

Counsel for appellant discusses the following rulings adverse to appellant:

(1) DHS's attorney asked appellant on direct examination if this case was the first time that she had been involved with DHS. Counsel for appellant objected on the basis of relevancy. DHS's attorney argued that, because it had alleged in the termination petition that further services to the family would be unlikely to result in reunification, appellant's receipt of services from DHS for many years was relevant. The trial court permitted the question. Appellant then testified that this was not the first time that she had been involved with DHS; that P.T. had been removed from her custody on two occasions; and that DHS had previously offered her parenting classes.

The admission of evidence is at the discretion of the trial court, and we will not reverse absent an abuse of that discretion and a showing of prejudice. *Turner v. Nw. Ark. Neurosurgery Clinic, P.A.*, 84 Ark.App. 93, 133 S.W.3d 417 (2003). Pursuant to Rule 401 of the Arkansas Rules of Evidence, "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. To be relevant, evidence need not conclusively establish the fact of consequence; all it must do, when considered in the entire context of the trial, is make the proposition for which it is offered more or less probable than it would be without it. *Yeakley v. Doss*, 370 Ark. 122, 257 S.W.3d 895 (2007). We hold that the trial court did not abuse its discretion in permitting this question.

(2) The court refused to permit appellant to testify, during cross-examination by her attorney, about what she had heard from the children and a caseworker about how the children were doing in foster care, because it was hearsay. Appellant did not argue that this testimo-

ny was admissible as an exclusion to the hearsay rule, nor did she proffer the excluded testimony. To challenge a ruling excluding evidence, an appellant must proffer the excluded evidence so as to permit review of a trial court's decision, unless the substance of the evidence is apparent. *Nelson v. Stubblefield,* 2009 Ark. 256, 308 S.W.3d 586. The trial court correctly ruled on this issue.

■ (3) Appellant objected, on the basis of relevancy, to DHS's attorney's question about how old her youngest child was when it was removed from her care by the Texas authorities. The court overruled the objection, stating that what had happened to a child in her care was relevant in view of her request that the children be returned to her. We hold that this evidence was relevant to the issues presented here and that the trial court did not abuse its discretion in permitting its introduction.

■ (4) The trial court permitted some photographs of J.F. that were taken at the hospital to be admitted into evidence through the testimony of Dr. Dias, even though he was not present when they were taken. Dr. Dias testified that, other than having gauze on his head, J.F. looked the same in the photographs as when he last saw J.F. Arkansas Rule of Evidence 901(a) states that the requirement of authentication for admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Pursuant to Rule 901(b)(1), one method of authentication is the presentation of a witness with knowledge that a matter is what it is claimed to be. *Dirickson v. State,* 104 Ark.App. 273, 291 S.W.3d 198 (2009). The trial court did not err in admitting the photographs.

■ (5) After Dr. Dias testified about the symptoms J.F. would have experienced because of his head injury, DHS's attorney asked him, "Would it be possible for a mildly attentive care giver over a two-day period of time not to notice these symptoms as they started to progress?" Counsel for appellant objected on the ground that this question called for speculation, and the court overruled that objection. Dr. Dias did not specifically answer that question, but did state that J.F. would have first had a bad headache, then nausea; would have said something if he could talk; and would not have been doing his ABCs an hour earlier (as appellant testified). We believe this question was quite relevant because the trial court could consider the implausibility of appellant's story in assessing her credibility and culpability. *Todd, supra.* In any event, because Dr. Dias did not actually say that appellant should have recognized the symptoms, and appellant had not previously objected to his testimony about J.F.'s symptoms, we see no possible prejudice to appellant from the court's overruling of her objection. *See Turner, supra.*

Appellant asks this court to grant her a retrial. Her *pro se* points are lengthy, repetitive, and extremely hard to follow. They can, however, be categorized as (1) complaints about her lawyer's representation; (2) complaints about the adequacy of DHS's reunification efforts; (3) numerous challenges to the sufficiency of the evidence and the credibility of witnesses; and (4) attempts to introduce evidence not included in the record. None of her points warrants reversal.

■ (1) *Her lawyer's representation.* Appellant argues that her lawyer failed to do as she asked. She states that her counsel did not make certain arguments, subpoena witnesses, or introduce certain documents into evidence. She finds fault in her lawyer's purported refusal to let her make a statement at the conclusion of the hearing. Appellant, how-

ever, failed to raise these issues below. It is well settled that a party cannot change the grounds for an objection on appeal but is bound on appeal by the scope and nature of the objections as presented at trial. *Sparrow v. Ark. Dep't of Health and Human Servs.*, 101 Ark.App. 193, 272 S.W.3d 846 (2008). This court does not reach arguments in termination cases that were not raised to the trial court. *Moore v. Ark. Dep't of Human Servs.*, 95 Ark.App. 138, 234 S.W.3d 883 (2006). This court does not consider a claim of ineffective assistance of counsel as a point on appeal unless it was first raised in the trial court. *Jones v. Ark. Dep't of Human Servs.*, 361 Ark. 164, 205 S.W.3d 778 (2005).

■ (2) *The adequacy of DHS's reunification efforts.* Appellant makes numerous statements in her points that she did not receive reasonable reunification efforts and that her case workers did not give her enough attention. She denied that she had received reasonable reunification services in her response to the petition for termination. In the termination order, the trial court found that DHS had made reasonable efforts to rehabilitate appellant, and stated:

k) [S]ome of the services provided by the Department include: psychological evaluations; counseling; referrals for drug and alcohol assessments; parenting classes; parenting without violence classes; ICPC home studies; transportation; drug screens; foster care; therapeutic foster care; medical, dental, and eye care; educational services, and counseling for the juveniles.

Ms. McKay testified at length about the many services offered appellant, and the addendum is replete with documentation supporting her testimony. The trial court did not err in making this finding.

(3) *The sufficiency of the evidence.* As discussed above, there is sufficient evidence to support the trial court's decision as to the children's best interests and grounds.

■ (4) *Evidence not in the record.* Appellant has included with her points documents that were not part of this record, including records of the protective-services case opened on appellant's youngest child in Texas, a news article about appellant's conviction, reports about the homicide investigation conducted by the Fort Smith Police Department, medical records of J.F., and the report of the Arkansas State Crime Lab. We do not consider evidence that is not part of the record on appeal. *Union Pac. R.R. v. Barber*, 356 Ark. 268, 149 S.W.3d 325, *cert. denied*, 543 U.S. 940, 125 S.Ct. 320, 160 L.Ed.2d 249 (2004); *see also* Ark. Sup.Ct. R. 6–9(c).

■ We hold that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit termination cases and that appellant's appeal is wholly without merit.

Affirmed; motion to withdraw granted.

HART and MARSHALL, JJ., agree.