Cite as 2024 Ark. App. 462

# ARKANSAS COURT OF APPEALS

DIVISION IV

No. CV-24-132

| | |
|---|---|
| | **Opinion Delivered** September 25, 2024 |
| JAMI MEYERPETER | |
| APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT |
| V. | [NO. 26JV-22-263] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE LYNN WILLIAMS, JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## WAYMOND M. BROWN, Judge

Counsel for appellant Jami Meyerpeter brings this no-merit appeal from the Garland County Circuit Court's order terminating Meyerpeter's parental rights to her son, Minor Child (MC).[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*[2] and Arkansas Supreme Court Rule 6-9(j), Meyerpeter's counsel has filed a motion to withdraw and a no-merit brief contending that there are no issues of arguable merit that would support an appeal. The clerk of this court mailed a certified copy of counsel's brief and motion to be relieved to Meyerpeter, informing her of her right to file pro se points for reversal under Arkansas Supreme Court Rule 6–9(j)(2), which she has elected

---

[1]Brandon "Nathaniel" Folsom's parental rights to MC were also terminated; however, he is not a party to this appeal.

[2]359 Ark. 131, 194 S.W.3d 739 (2004).

to do. We affirm the termination of Meyerpeter's parental rights and grant counsel's motion to withdraw.

The Arkansas Department of Human Services (DHS) exercised a seventy-two-hour hold on MC on September 12, 2022, shortly after his birth, following Meyerpeter's positive test result for amphetamines and MC's exhibiting withdrawal symptoms. The affidavit attached to the petition for dependency-neglect provided that DHS had a history with the family—Meyerpeter's parental rights to two other children had previously been terminated due to her drug use.

An ex parte order for emergency custody was entered on September 15 placing MC in DHS's custody and finding that removal from Meyerpeter's custody was in MC's best interest and necessary to protect his health and safety. The circuit court found that DHS had been involved with the family since October 10, 2019, and that, despite services provided to the family, the services did not prevent removal because Meyerpeter continued to abuse illegal substances. The court further found that the efforts made to prevent MC's removal were reasonable in light of the family's and the juvenile's needs.

An agreed probable-cause order was entered on September 26. Meyerpeter stipulated that there was probable cause that the emergency conditions that existed at the time of removal continued to exist such that it was in MC's best interest to remain in DHS's custody. On October 6, DHS filed a motion to terminate reunification services, stating that MC was subjected to aggravated circumstances, and there was little likelihood that services to the family would result in successful reunification due to Meyerpeter's history of noncompliance with DHS and the termination of her parental rights to MC's siblings.

An agreed adjudication order was entered on November 3. The circuit court found MC dependent-neglected; he was at substantial risk of serious harm due to parental unfitness because of Meyerpeter's substance abuse. The case goal was set as reunification with a fit and proper parent with a concurrent plan of adoption. Meyerpeter was ordered to follow the case plan; participate in and attend all visitations; complete parenting classes; schedule and keep all appointments; obtain and maintain a safe, suitable, and appropriate home; maintain an environment free from illegal substances and other health and safety hazards; obtain and maintain adequate income; request transportation assistance from DHS forty-eight hours in advance; participate in any service requested by DHS; maintain consistent contact with MC; demonstrate stability and the ability to provide for the health, safety, and welfare of MC; maintain consistent contact with DHS; and keep DHS informed of her current address. DHS agreed to voluntarily dismiss the motion to terminate reunification services.

An agreed review order was entered on February 9, 2023. Meyerpeter was found partially compliant with the case plan. She had completed parenting classes, and a hair-follicle test revealed that she was negative for all illegal substances. However, Meyerpeter was not employed and failed to attend counseling. MC was ordered to remain in the custody of DHS, noting safety concerns that prevented placement with Meyerpeter—-specifically, her need to complete a psychological evaluation and follow its recommendations, attend counseling, and complete additional parenting classes. The goal of the case remained reunification with a fit and proper parent. The circuit court found that DHS complied with the case plan and made reasonable efforts to provide family services and to finalize a permanency plan.

Another review hearing was held on May 17. Meyerpeter was found to be not compliant with the case plan. Although she was employed, she tested positive for methamphetamine on May 2

and admitted she had been using drugs off and on for the past few months. Meyerpeter was currently not participating in a drug-treatment program.

The circuit court entered a permanency-planning order on September 5. Meyerpeter was again found not to be compliant with the case plan because she continued to abuse illegal substances. The court found that she had not made significant, measurable progress on the case plan. The goal of the case was changed to adoption.

DHS filed a petition for termination of parental rights on September 19 alleging two statutory grounds for termination: the failure-to-remedy ground and the involuntary-termination ground. Following the November 29 termination-of-parental-rights hearing, Meyerpeter's parental rights to MC were terminated. The termination order was entered on December 11, 2023.

This court reviews termination-of-parental-rights cases de novo.[3] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[4] The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[5] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm

---

[3]*Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[4]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.
[5]*Id.*

conviction that a mistake has been made.[6]  In determining whether a finding is clearly erroneous, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[7]

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination-of-parental-rights case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that lists all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explain why each adverse ruling is not a meritorious ground for reversal.[8]  In evaluating a no-merit brief, we determine whether the appeal is wholly frivolous or whether there are any issues of arguable merit.[9]

To terminate parental rights, a circuit court must find by clear and convincing evidence that one or more of the statutory grounds for termination exists.[10]  Proof of only one statutory ground is sufficient to terminate parental rights.[11]  The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential

---

[6]*Id.*

[7]*Id.*

[8]Ark. Sup. Ct. R. 6-9(j)(1)(A).

[9]*Cullum v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 34.

[10]Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2023).
[11]*Tillman, supra.*

harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[12]

In her no-merit brief, counsel argues that any challenge to the statutory grounds for termination of Meyerpeter's parental rights would be wholly frivolous. Here, the circuit court terminated Meyerpeter's parental rights to MC on two grounds: the failure-to-remedy ground and the involuntary-termination ground. Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(4)* permits the termination of parental rights if the court finds that the parent has had his or her parental rights involuntarily terminated as to another child. Counsel explains and the record reflects that Meyerpeter's parental rights were previously terminated to two of MC's siblings, thus meeting the requirements of the involuntary-termination ground.

Counsel further explains that evidence presented at the termination hearing also supports the circuit court's best-interest finding. DHS adoption specialist, Susan Miller testified that there are 281 potential adoption matches for MC and that MC's current foster care placement is interested in adopting him. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding.[13]

As for potential harm, the circuit court found there had been no substantial changes in Meyerpeter's situation since MC's removal and that her behavior during the case is an indication that she would not appropriately care for MC if he was placed back in her care. When considering

---

[12]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

[13]*Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 121, 543 S.W.3d 540.

potential harm, a court may treat past behavior as a predictor of future behavior.[14] Here, Meyerpeter waited a year into the case before entering inpatient treatment; she testified at the hearing that she was currently in a residential treatment program and could not provide an end date. Meyerpeter also admitted that she was still using drugs less than three months before the termination hearing but that she had been clean and sober "a little over two months." At the termination hearing, the circuit court also found there was no proof of employment or a proper home and no plan for how to care for MC. We have held that continued drug use and instability demonstrate potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case.[15] Thus, counsel contends, and we agree, that there can be no meritorious challenge to the circuit court's best-interest finding.

Counsel has reviewed the record for all rulings adverse to Meyerpeter made by the circuit court on all objections, motions, and requests made by her at the termination hearing. Counsel states that the only adverse ruling, other than the termination itself, was the circuit court's denial of a final visit between Meyerpeter and MC. Any decision to grant a final-visit request is within the circuit court's discretion.[16] Further, in custody, visitation, or dependency-neglect matters, the State and the circuit courts have a duty to protect the best interest of the child.[17] Here, Meyerpeter offered no argument to support her request for a final visit. Further, the attorney ad litem objected to a last visit, arguing that it would not be beneficial to fourteen-month-old MC since it had already been

---

[14]*Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915.

[15]*Jordan v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 344, 652 S.W.3d 611.

[16]*See Best v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 485, 611 S.W.3d 690.

[17]*See Ark. Dep't of Hum. Servs. v. Cole*, 2011 Ark. 145, 380 S.W.3d 429.

three months since he last saw Meyerpeter.  We cannot say that the circuit court abused its discretion in denying Meyerpeter's unsupported request for a final visit following the termination of her parental rights to MC.

Meyerpeter submitted pro se points on appeal.  In her argument for reversal, she contends she is "a very good mother" and "did all the right things" to achieve reunification.  She states that much of what was presented in court were "flat out lies," there were biased opinions against her stemming from her prior case and the termination of her parental rights to two other children, and MC was in no danger due to her drug use because she functions "normally in society."  Meyerpeter's attempt to minimize the detrimental effect of her long-term drug use is troubling.  Additionally, her arguments are essentially a request to reweigh the evidence, which we do not do.[18]  Credibility determinations are left to the circuit court.[19]  To the extent that Meyerpeter disputes the evidence and states that she can "provide proof" of her drug-test results and participation in rehabilitation and counseling, we note that the time to present such evidence and proof is at the termination hearing.  As to her claim that she received ineffective assistance of counsel and that DHS mishandled her case, she failed to raise the arguments below and is barred from raising those arguments for the first time on appeal.[20]  Thus, Meyerpeter's pro se points provide no meritorious grounds for reversal.

Having carefully examined the record and counsel's brief, we conclude that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in

---

[18]*Newman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 207, 489 S.W.3d 186.

[19]*Id.*

[20]*Vasquez v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 575, 337 S.W.3d 552.

termination cases and that the appeal is wholly without merit. Accordingly, we affirm the termination of Meyerpeter's parental rights to MC and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Demarcus D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.