Cite as 2026 Ark. App. 180

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-25-579

JEFFERY STANFIELD

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES AND MINOR CHILDREN

APPELLEES

Opinion Delivered March 11, 2026

APPEAL FROM THE SHARP
COUNTY CIRCUIT COURT
[NO. 68JV-24-37]

HONORABLE ADAM G. WEEKS,
JUDGE

AFFIRMED; MOTION TO
WITHDRAW GRANTED

## MIKE MURPHY, Judge

Appellant Jeffery Stanfield appeals the termination of his parental rights to his children MC1 and MC2, who were ages one and nine months, respectively, when they entered the custody of the Arkansas Department of Human Services (DHS). *Pursuant to Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Rule 6-9(j) of the Rules of the Arkansas Supreme Court and Court of Appeals, Stanfield's counsel filed a no-merit brief and a motion to withdraw asserting there are no issues of arguable merit to raise on appeal. The clerk of this court provided Stanfield with a copy of his counsel's brief and notified him of his right to file a pro se statement of points for reversal. Stanfield filed points for reversal. We affirm the termination of Stanfield's parental rights and grant counsel's motion to withdraw.

DHS received a call about Stanfield's family in August 2023 when DHS received a Garrett's Law report that MC2 was born with illegal drugs in his system. MC2's mother, Amanda (who is not part of her case), and Stanfield had been using methamphetamine and marijuana. A protective-services case was opened, and the family began receiving services. On April 9, 2024, DHS petitioned the court for dependency-neglect, alleging that it had received information that Standfield had been arrested for domestic battery and endangering the welfare of a minor, and Amanda had tested positive for methamphetamine and other substances. DHS did not seek immediate custody.

A hearing on the petition was held on May 14, 2024, and the children were adjudicated dependent-neglected due to parental unfitness because of Amanda's drug use. Jeffery also was found to be unfit because a no-contact order in a criminal case prevented him from having contact with Amanda or the children. DHS took custody of the children, and the goal of the case was reunification. The next month Stanfield was found to be the children's father. He was mostly compliant with the case plan and was awarded four hours of visitation each week. On February 7, 2025, DHS filed a petition to terminate Stanfield's parental rights, alleging that he was not fit to parent the children because he did not have housing appropriate for the children, he had failed to complete services, he had ongoing criminal charges that resulted in the loss of his driver's license and vehicle, and he had not demonstrated the skills necessary to be the sole caretaker for the children. As to grounds, DHS pleaded that he had failed to remedy issues that prevented placement with him and

that aggravated circumstances existed because there were no other services that could be offered that would make reunification likely.

A hearing on DHS's petition was held on June 17, 2025; at that hearing, the court heard the following evidence.

Stacy Sutton, a DHS program assistant, testified to two visits Stanfield had with his children. Her testimony was that on one visit, he did not bring an appropriate lunch for the children (beef jerky, pepperoni slices, and Cheetos); the one-year-old choked on the beef jerky. She further stated that he would hold the children in his lap for about ten minutes, then the children would play on the floor. When one child threw a block that hit the other child, Stanfield did not comfort the hurt child appropriately or do anything to address the other's behavior in throwing.

Stanfield testified. He lives with his girlfriend, Cheyenne. They have a house they just moved into the night before the hearing. Two months prior, they had lived in a two-bedroom house with Cheyenne's parents and her three children. They're still fixing up the house, it needed carpet in a room and had an unfinished wall in the laundry room. He has a job and takes home about $500 a week. He had trouble reading and comprehending his parenting-class materials and had to retake the class because Cheyenne was helping him too much with it. He has pending charges for felony fleeing and some minor traffic misdemeanors. He did not testify any further to the charges.

He was asked whether he could take the children home with him that day. He replied, "Besides the house needing a couple more things." When asked how the visits with his

children had gone, he replied, "Most of them not that good." He said a lot of his visits were cut short because he could not calm them down. His visits had been suspended in December 2024 and reinstated in May 2025. He had had three visits since visitation was reinstated in May. At the visit where the older child threw the block at the younger child, he testified that he got on to the older child: "I kind of raised my voice and told him 'no'."

Cheyenne was still married to someone else. He said she would help him parent the children.

The DHS caseworker testified. She said the children are adoptable. They both have developmental issues, but with services, they are getting closer to meeting their milestones on time. DHS became involved with the family when MC2 tested positive at birth for drugs in her system. Originally, the family received intensive in-home services with a family-intervention specialist who visited the home two to three or more times each week. They received almost a full year of services before the children were removed due to the mother's suspected drug use. She said that Stanfield tested positive for drugs at the beginning of the case but tested clean thereafter. He had not completed his parenting classes and had to redo portions of the classes. When asked about the assignments, "he had no knowledge," but even when he redid the lessons, his parenting ability at visitations never improved.

DHS had not yet been to his new house; when DHS asked to come see it, Stanfield had told DHS that the house was not yet ready for them. In light of the testimony at the hearing, she did not believe the house was presently appropriate. She believes that Stanfield cannot safely or appropriately parent his children, and that is why DHS does not believe

custody could be returned to him today. DHS also had concerns about Cheyenne—they offered her the opportunity to participate with Stanfield in family-centered treatment court and submit to drug screens and participate in other services. She took one drug screen, which was positive for drugs, and then she refused to take any further drug screens. DHS believed it would not be appropriate for her to come to the visits with the children and Stanfield. Moreover, the purchase contract for the home was in Cheyenne's name alone.

DHS had offered Stanfield parenting classes and accommodations with the parenting classes in the event that he had a learning disability. Stanfield said that he did not need any accommodations. She concluded that DHS simply did not believe Stanfield had demonstrated the skills necessary to be the sole caretaker of the children, and he had even indicated to them that he would not be the sole caretaker; he would use Cheyenne—a woman who would not participate in any DHS services or who even knew the children at all—to help take care of them.

The caseworker even attended the next-to-final visit Stanfield had with his children to observe his parenting and help demonstrate parenting skills as necessary. She explained that because she knew the efforts DHS had made to help him, she attended one of the supervised visits to see his interactions with the children. Stanfield continued to struggle even with basic engagement. At one point, MC1 had run out of the family-time room and was lying on the floor tapping his head on a door to the lobby. She told Stanfield to intervene and engage the child, but he stood watching and merely told MC1 to "come on," without effect. She then demonstrated how to redirect MC1 by engaging him in play, prompting him

to retrieve his mailbox and clean up toys, after which both children began participating appropriately. She testified that this level of engagement required minimal effort but that Stanfield was unwilling to do even that. Instead, he suggested installing a baby gate at future visits, which was reminiscent of prior concerns in the home before DHS took custody of the children where the children had been left alone in a room confined with a gate.

From the bench the court said:

> Okay. So let me start by saying I'm going to terminate today. And Mr. Stanfield, I think you are going to find that confusing because I think you've been lost for a long time in these services and have been looking for the one thing that you can do that's going to make all of this better. And in some sense, I feel sorry for you because I think you want your children back, but I don't know that you can get them back. I don't know that you have the ability to do it.
>
> I agree that to some extent there's a lack of want to, but there's also a lack of ability to, and that's very sad to me, but it's in the best interest of these children to have permanency and termination is necessary in order for them to have that permanency. They're adoptable. It's in their best interest to be adopted or to have this termination. At least the department has provided what may be the most services I've ever seen in a case ever. Ever in my tenure as a judge with this docket. I don't know that I've ever seen so much effort put into a case maybe too much.

The order that followed granted DHS's petition to terminate Stanfield's parental rights on all three grounds alleged, included aggravated circumstances. Stanfield appealed, and counsel filed this no-merit brief asserting that, after review, there are no issues of merit to present for reversal.

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2023). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a

6

firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Only one ground is necessary to terminate parental rights. *Id.*

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit brief and motion to withdraw if, after studying the record and researching the law, counsel determines the appellant has no meritorious basis for appeal. The brief must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). Additionally, the brief's statement of the case and facts must contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B). In evaluating a no-merit brief, the issue for this court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores*, 359 Ark. 131, 194 S.W.3d 739.

To terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B). *Trogstad v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 443, 609 S.W.3d 661. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

The written order found that DHS has provided special intensive parenting classes to Stanfield and assistance in completing them, but "[d]espite these services he is still having issues appropriately parenting the children," and because of his lack of progress made toward reunification, "there is little likelihood of successful reunification."

Under the "aggravated circumstances" ground, a court may terminate parental rights if the court has determined that there is little likelihood that further services will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix). This type of aggravated circumstance occurs when a parent is not following through with offers of assistance, is not completing basic goals of the case plan, and is not making significant progress. *Jones v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 299, at 7, 578 S.W.3d 312, 317. In *Jones*, we wrote that a parent not demonstrating sufficient parenting skills to regain custody or be trusted with a trial placement or unsupervised visitation after seventeen months of services supported a finding of aggravated circumstances. In *Choate v. Arkansas Department of Human Services*, we

8

held that aggravated circumstances existed when parents "were not demonstrating any parenting techniques or skills" despite instructions, and the caseworker testified that one parent "constantly needed prompts and that he was still unable to demonstrate ability in techniques she had worked on with him for over a year." 2019 Ark. App. 387, at 8, 587 S.W.3d 553, 558. This is also the case here. The circuit court observed, and the record reflected, that Stanfield had received an extraordinary number of services designed to help him become an adequate father to the children, and despite these efforts, he simply could not do it. The aggravated-circumstances ground is supported by substantial evidence. A parent's continued inability to protect and care for his or her child and failure to benefit from the services provided demonstrate little likelihood that further services will result in a successful reunification. *Bentley v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 374, 554 S.W.3d 285.

In addition to at least one statutory ground, a termination order must also be based on a finding by clear and convincing evidence that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3). The Juvenile Code requires that a best-interest finding be based on a consideration of at least two factors: (1) the likelihood that if parental rights are terminated, the child will be adopted; and (2) the potential harm caused by returning the child to the custody of the parents. Ark. Code Ann. § 9-27-341(b)(3)(A). It is the overall evidence, not proof of each factor, that must demonstrate termination is in the child's best interest. *McFarland v. Ark. Dep't of Hum. Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005). In considering potential harm, proof of a specific potential harm is not required. *Pine v. Ark.*

*Dep't of Hum. Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. Moreover, evidence of potential harm must be viewed in a forward-looking manner and considered in broad terms. *Samuels v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 527, 443 S.W.3d 599.

The caseworker testified that the children are adoptable. Testimony from a DHS worker that a child is adoptable is sufficient to support an adoptability finding. *Solee v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 640, 535 S.W.3d 687. Therefore, there can be no meritorious challenge to the circuit court's adoptability finding.

Regarding potential harm, the circuit court concluded it was in the children's best interest to terminate Stanfield's parental rights. This is not clearly erroneous; the same evidence that supports the statutory ground for termination also supports the potential-harm finding. *See, e.g., Choate, supra.*

In accordance with Ark. Sup. Ct. R. 6-9(i)(1)(A), counsel for Stanfield has reviewed the record for all rulings adverse to him made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose. Counsel correctly identifies the remaining two adverse rulings: an objection to the relevance of testimony that the children's mother had her parental rights terminated to other children she did not share with Stanfield, and an objection made during closing argument concerning some facts not in evidence. We agree with counsel that neither ruling would provide a basis for a merit-based appeal.

Stanfield filed pro se points. The narrative discusses Stanfield's circumstances surrounding the children's entering custody, his efforts during the case, and the type of

person and father he is today. It also alleged that his lawyer was not helpful. The narrative is essentially asking us to reweigh the evidence, which we will not do. *Meyerpeter v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 462, at 8, 699 S.W.3d 377, 383. Credibility determinations are left to the circuit court. To the extent that Stanfield disputes the evidence, the time to present it was at the termination hearing. *Id.* As to his claim that he received ineffective assistance of counsel, he failed to raise the arguments below and is precluded from raising those arguments for the first time on appeal. *Id.* The pro se points provide no meritorious grounds for reversal.

Having carefully examined the record and counsel's brief, we conclude that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and that the appeal is wholly without merit. Accordingly, we affirm the termination of Stanfield's parental rights to MC1 and MC2 and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

GLADWIN and WOOD, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Demarcus D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain* and *Linda J. Hamilson*, attorneys ad litem for minor children.

11