2015 Ark. App. 266
**Steve HUMBERT, Appellant**

v.

**Arkansas DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees**

**No. CV–14–1079**

Court of Appeals of Arkansas, DIVISION II.

Opinion Delivered April 22, 2015

Leah Lanford, Arkansas Public Defender Commission, Dependency–Neglect Appellate Division, for appellant.

Tabitha Baertels McNulty, Office of Policy and Legal Services, for appellee.

Chrestman Group, PLLC, by: Keith Chrestman, attorney ad litem for minor children.

KENNETH S. HIXSON, Judge

Appellant Steve Humbert appeals from the termination of his parental rights to his two sons, C.H. and M.H., who are ages seven and six respectively.[1] On appeal, Steve argues that there was insufficient evidence to support the termination. We affirm.

We review termination of parental rights cases de novo. *Willingham v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 568, 2014 WL 5382622. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark.Code Ann. § 9–27–341 (Supp. 2013); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

This case was initiated on September 23, 2013, when appellee Department of Human Services (DHS) filed an ex parte motion for emergency custody. Attached to the motion was an affidavit by a DHS caseworker stating that DHS had taken an emergency hold of both children after a report had been made to the child-abuse hotline stating that the children's mother, Nycole, had been using methamphetamine and crack cocaine in a hotel room in the presence of the children. Steve was reportedly buying the drugs for Nycole. The caseworker went to Steve and Ny-

---

1. The parental rights of the children's mother, Nycole Fargo, were also terminated, but she is not a party to this appeal.

cole's residence to inquire about the report, and Nycole admitted that she had recently used cocaine. Nycole then tested positive for THC, methamphetamine, and cocaine, and Steve refused a drug screen. Based on these circumstances, the trial court entered an ex parte order for emergency custody on the same day DHS filed its petition.[2]

The children remained in DHS custody until November 6, 2013, when the trial court entered an order placing the children in their father's custody. That order provided that all of the children's visitation with their mother must be supervised by DHS. The trial court entered an adjudication order on November 12, 2013, wherein it found the children to be dependent-neglected based on parental unfitness and neglect due to Nycole's illegal drug use. The adjudication order stated that Steve had passed his drug screen, had a job and a place to live, and that placement of the children with him was in the children's best interest. The adjudication order reiterated that Nycole shall not have contact with the children unless DHS was present.

On January 21, 2014, DHS filed an emergency motion for an ex parte change of custody of the children from Steve back to DHS. The emergency motion was based on Steve allowing the children to visit Nycole without DHS supervision in violation of the trial court's orders. An attached affidavit by a caseworker stated that DHS had made an unannounced visit to Steve's apartment and found Steve and the boys there with Nycole. DHS attempted to drug screen Nycole, but she refused. Upon speaking with the boys, the boys disclosed that they had been seeing their mother on almost a daily basis since they had come to live with their father from foster care. The boys indicated that their mother had watched over them while their father was at work, that she had taken them on outings while their father stayed home, and that she frequently spent the night at the apartment. The boys stated that their parents often argued, which scared them. C.H. stated that his father had told him not to tell anyone that the boys were seeing their mother or else they would get taken away again. The caseworker stated that there was no furniture in the apartment and little food. Based on this information, the trial court granted DHS's motion for an emergency change of custody on the same day that the motion was filed.

Steve was terminated from his employment on May 23, 2014, after he tested positive for methamphetamine on a hair-follicle drug screen. On June 12, 2014, the trial court entered a permanency-planning order changing the goal of the case from reunification to termination of parental rights and adoption. In the permanency-planning order, the trial court noted that Nycole continued to use illegal drugs and had not maintained stable housing or employment. The order stated that Steve continued to be enmeshed with Nycole, had not diligently applied himself to counseling, had not addressed his anger issues, and that his lack of credibility made it impossible to assess his compliance with the court's prior orders to maintain employment and refrain from using illegal drugs.

DHS filed a petition to terminate the parental rights of both parents on July 22, 2014. The termination hearing was held on September 19, 2014.

On September 26, 2014, the trial court entered an order terminating the parental rights of both parents. The trial court

---

2. At the time the emergency custody order was entered, Steve was the putative father of the boys. However, three days later an order was entered establishing his paternity.

found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the court specifically considered the likelihood that the children would be adopted, as well as the potential harm of returning them to the custody of their parents as required by Arkansas Code Annotated section 9–27–341(b)(3)(A)(i) & (ii) (Supp. 2013). With respect to Steve, the trial court also found clear and convincing evidence of one statutory ground. Specifically, pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(B)(vii)(a), the trial court found that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that placement of the juveniles in the custody of their father was contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the father had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate his circumstances that prevented the placement of the juveniles in his custody. The trial court made specific findings that Steve had been terminated by his employer for testing positive for methamphetamine; that he had refused to submit to random weekly drug screens; that he was homeless and unemployed; that he had failed to demonstrate stability or the ability to protect the boys and keep them safe; and that he had no desire to participate in counseling.

Lori Johnson, the DHS caseworker assigned to this case, testified at the termination hearing. Ms. Johnson stated that the children's mother had made no progress during the pendency of the case and was unstable and continued to use illegal drugs. Ms. Johnson further testified that Steve had not made substantial, measurable progress. Ms. Johnson expressed concern because Steve had no stable housing or employment, did not have a car, and had missed numerous scheduled drug screens leading up to the termination hearing. Ms. Johnson also testified that at one time the children's mother disclosed to Ms. Johnson that she and Steve had been using drugs together. Ms. Johnson testified that the boys are highly adoptable. She recommended termination of both parents' parental rights so that the children could be adopted.

Steve testified on his own behalf, and he stated that he was homeless and living with a friend. Steve did not have a permanent job, but he said he had done some work through a temporary agency over the past month. Steve stated that he had never used methamphetamine, although he acknowledged that when he got fired from his previous job as a truck driver it was his fault. The only reason Steve lost that job was due to testing positive for methamphetamine. Steve testified that he was extremely close with his children and had a great relationship with them before they were taken into DHS custody. Steve stated that he thought he could get a permanent job and an apartment in a few months. He also stated that, if the children were returned to him and the court ordered no contact with their mother, he would follow that order.

In this appeal, Steve challenges the sufficiency of the evidence supporting termination of his parental rights. He argues that there was an absence of evidence that termination of his parental rights was in the children's best interest, and also that the single statutory ground found by the trial court was not met.

In support of his argument, Steve cites *Benedict v. Arkansas Department of Human Services,* 96 Ark. App. 395, 242 S.W.3d 305 (2006), where we stated that if there is still reason to believe there can be

a positive, nurturing parent-child relationship, the law favors preservation, not severance, of natural familial bonds. Appellant also cites Arkansas Code Annotated section 9–27–341(a)(4)(B) (Supp. 2013), which provides, "The court shall rely upon the record of the parent's compliance in the entire dependency-neglect case and evidence presented at the termination hearing in making its decision whether it is in the juvenile's best interest to terminate parental rights." Steve contends that, by making its decision in a vacuum and not considering his compliance throughout the entire dependency-neglect case, the trial court violated the above statutory requirement.

Steve concedes that he was not able to take custody of his children at the time of the termination hearing, but he blames his instability on one failed drug test (which he claims was questionable) that caused him to lose his job as a truck driver. Steve asserts that during the pendency of this case he was mostly in compliance with the case plan and had demonstrated stability and the ability to care for the boys prior to his unfortunate dismissal from his job. His children had only been out of his custody for a total of about nine months when the termination hearing was held, and Steve contends that it would have been in the children's best interest to allow him more time to regain his stability so he could again provide a stable home for them. Steve specifically takes issue with the trial court's finding that he was indifferent to remedying the subsequent issues or rehabilitating his circumstances. To the contrary, Steve claims that throughout the case he demonstrated a genuine interest in maintaining custody of the boys, and that at the time of the termination hearing he was working toward that goal. For these reasons, Steve asks that the trial court's order terminating his parental rights be reversed.

On this record, we conclude that the trial court did not clearly err in finding that termination of Steve's parental rights was in the children's best interest. Although Steve denied methamphetamine use, it is undisputed that he lost his job after testing positive for methamphetamine, and he missed multiple drug screens scheduled by DHS including the last six preceding the termination hearing. The children's mother, Nycole, disclosed to a caseworker that she and Steve had used drugs together. And when Steve had been given custody of the children, he exposed the children to their drug-addicted mother on a daily basis in direct violation of the trial court's orders. By his own admission, at the time of the termination hearing Steve was homeless, had no vehicle, and had no steady job. Based on these facts, the trial court could reasonably conclude that there was the potential for harm if the children were returned to their father's custody. Moreover, there was evidence that the children were highly adoptable.

We further conclude that the trial court did not clearly err in basing the termination on the "other factors" statutory ground. Due to the aforementioned factors, there were other issues that arose after this case began that demonstrated that the return of the children to Steve's custody would be contrary to their health, safety, or welfare. And given the evidence of Steve's drug use and avoidance of drug screens, his propensity to subject the children to their drug-addicted mother in contravention of court orders, and his homelessness and instability, we find no clear error in the trial court's determination that Steve had manifested indifference to remedying the subsequent issues.

We have held that a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances, *Dozier v. Arkansas Department of Human Services,* 2010 Ark. App. 17, 372 S.W.3d 849, and this principle is applicable in this case. We hold that the trial court's decision to terminate appellant's parental rights was not clearly erroneous.

Affirmed.

Kinard and Glover, JJ., agree.