SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–17–31

| | |
|---|---|
| ROBIN HOLLOWAY AND CHRISTOPHER BRITT<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | **Opinion Delivered:** May 3, 2017<br><br>APPEAL FROM THE GREENE COUNTY CIRCUIT COURT<br>[NO. 28JV-09-214]<br><br>HONORABLE BARBARA HALSEY, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Robin Holloway and Christopher Britt appeal the Greene County Circuit Court order terminating their parental rights to their five children, L.B. (6/17/03), R.B. (4/15/05), M.B. (9/17/06), C.B. (10/3/07), and Z.B. (12/13/08). They argue that the circuit court erred in finding that it was in the best interest of the children for their parental rights to be terminated. We affirm.

On April 23, 2014, the Arkansas Department of Human Services ("DHS") filed a petition for an ex parte order of emergency protection of L.B., R.B., M.B., C.B., and Z.B. In the affidavit attached to the petition, DHS stated that it had received multiple hotline reports concerning Holloway and Britt dating back to 2002,[1] which included allegations of

---

[1] The 2002 reports involved sexual abuse of minor victims by Britt, who was eighteen years old at the time. The reports were found true.

sexual abuse, physical abuse, inadequate supervision, and environmental neglect. DHS further stated that Britt and Holloway had joint custody of the children and that Holloway was dating Nathan Warren, a level III sex offender. DHS proposed that Britt should have custody of the children and that Holloway should have only supervised visitation. On the same day the petition was filed, the circuit court entered an order granting the petition. On April 29, 2014, the court found probable cause for the emergency order.

On May 28, 2014, DHS filed a petition for emergency custody and dependency-neglect, and the circuit court granted the petition that same day. In the affidavit attached to the petition, DHS alleged that Britt had been unable to meet the children's needs; that Holloway had unauthorized visitation with the children; and that the children had been threatened not to tell the truth to their counselors, teachers, and DHS workers. On June 1, 2014, the court held a probable-cause hearing, and on July 1, 2014, the court entered a probable-cause order.

On September 9, 2014, the circuit court held a dependency-neglect hearing, and on February 13, 2015, the court entered an order adjudicating the children dependent-neglected. On July 1, 2016, DHS filed a petition for termination of Holloway's and Britt's parental rights.

On August 19, 2016, the court held a termination hearing. At the hearing, Britt testified that he did not believe L.B., R.B., or M.B. were adoptable because of their medical and aggression issues. Holloway testified that she did not believe her children were adoptable because of their emotional and behavioral issues.

Holly Johnson, a Greene County family-service worker, testified on behalf of DHS and stated that she had been assigned to the case since January 25, 2016. She believed that the children could be successful in a loving and caring adoptive home but that DHS had been unable to initiate trial placements. She noted that the children had been placed in different homes since they had been removed from their parents' custody, and she further discussed the children's behavioral and development problems.

She stated that L.B. is in the eighth grade and that he is a very sweet child but that he has severe anger outbursts. She explained that during the outbursts, he frequently destroys items such as his eyeglasses and electronic tablets. She believed L.B. is adoptable but noted that his current foster home did not want to adopt him. She further noted that he had been placed in a therapeutic foster home and that he is receiving therapy there. She also stated that he enjoys playing on a soccer team. On cross-examination, Johnson testified that L.B. had been moved to multiple foster homes as result of his anger issues and that his anger issues are a hurdle to adoption.

Johnson testified that R.B. is in the sixth grade and that she is adoptable. She stated that she is in a group-home placement and that she receives therapy there. She also noted that she had been participating in extracurricular activities such as horseback riding and that she is learning patience through caring for the horses. On cross-examination, Johnson testified that R.B. suffers from ADHD and that she has trouble following instructions but that she had not received any recent reports of bad behavior. She stated that R.B.'s group-home parent had verbally expressed interest in adopting her.

SLIP OPINION

Johnson testified that M.B. is in fourth grade and that she is adoptable. She noted that over the summer she had traveled with her foster family and had behaved well on the trips. On cross-examination, she testified that M.B. also has anger outbursts and had tried to physically harm her foster parent. She explained that M.B. and C.B. had initially been placed in the same home, but they had to be separated because they had disagreements that resulted in physical aggression. She noted that M.B.'s current foster parents had verbally expressed interest in adopting her.

Johnson explained that C.B. has jealousy issues with M.B. and other children but that she is doing well in her foster home and that she is adoptable. On cross-examination, she stated that since C.B.'s separation from M.B., C.B.'s behavior had improved, but the case manager cannot mention M.B. without C.B. becoming agitated. She noted that C.B. lives in a therapeutic foster placement.

Johnson testified that Z.B. is in second grade and that he is adoptable. She stated that he works well with others and that he had behaved well on summer trips with his group home. On cross-examination, Johnson stated that he has emotional and behavioral issues. She noted that he cries when asked to complete simple tasks and that he frequently removes his clothing and runs around his home. She noted that he had been living in the same home for the last six months.

Kandi Tarpley, the Greene County foster-care unit supervisor, testified that based on her eleven years of experience, the children are a "tough adoption." She explained that the adoption process may take time but some families want to raise children with behavior issues

and special needs. She testified that "there isn't anything that could bar these kids from being adopted."

On cross-examination, Tarpley stated that she had testified about the adoptability of children on five or six occasions. She stated that she had never testified that a child is not adoptable. She did "not believe a child can be unadoptable." Further, when asked whether "no matter what the problems are with the kid, you would testify under oath that that child is adoptable," Tarpley stated, "[Y]es, I would." She further noted, "[K]ids do age out [of foster care]. Even those children are adoptable."

At the conclusion of the hearing, the court found it was in the best interest of the children to terminate Britt's and Holloway's parental rights. The court noted that it had considered "the adoptability of these children in great detail." On October 28, 2016, the court entered a termination order based on three statutory grounds.[2] In the order, the court found by clear and convincing evidence that it was in the best interest of the children to terminate Britt's and Holloway's parental rights. The court "specifically considered the likelihood that the juveniles will be adopted if the termination is granted" and found that "the children are adoptable." Thereafter, Britt and Holloway filed their notices of appeal.

We review termination-of-parental-rights cases de novo. *Brown v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 725, 478 S.W.3d 272. An order terminating parental rights must be based on a finding by clear and convincing evidence that one of the grounds stated in the termination statute is satisfied and that the sought-after termination is in the children's

---

[2] Specifically, the court terminated their parental rights based on the grounds in Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*, and Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)* (Repl. 2015).

best interest. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's finding on the disputed fact is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

Britt and Holloway do not challenge the statutory grounds for termination. They contend only that the circuit court's best-interest finding must be reversed because there was insufficient evidence concerning the likelihood of adoption. In making a "best-interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. *Miller v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 239, 492 S.W.3d 113. While the likelihood of adoption must be considered by the circuit court, that factor is not required to be established by clear and convincing evidence. *Caldwell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 144, 484 S.W.3d 719 (citing *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495). A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *Id.*

However, this court has reversed a termination order where the only evidence of adoptability was a caseworker's opinion that the child was adoptable because "all children are adoptable." *Grant v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 636, at 13, 378 S.W.3d 227, 233. Specifically, in *Grant*, the child suffered from autism, and the condition was not considered in determining whether he was adoptable. *Id.* The record showed that it had

been impossible to find a foster placement for the child in the same county as the parent, that his foster parent had no interest in adopting him, and that the caseworker offered only one email contact regarding a person who might be interested in adopting a child with autism. *Id.*

Britt and Holloway assert that the circumstances in this case are similar to *Grant*. They argue that the only evidence of adoptability is Johnson's regurgitated answers of what the law requires and Tarpley's belief that all children are adoptable. We disagree. Johnson testified extensively about the children's behavioral problems but concluded that she believed the children were adoptable. She noted that the children had been participating in therapy and extracurricular activities and that their behavior was improving. *See Cobb v. Ark. Dep't of Human Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004) (affirming the trial court's best-interest determination where the caseworker testified that the children were adoptable even though they were older and had issues to work through). Further, as to Tarpley's testimony, even though she testified that she believed all children are adoptable, she considered the children's behavioral and special needs in this case and stated the children are adoptable. Accordingly, given both Johnson's and Tarpley's testimony, we hold that there was sufficient evidence on the issue of adoptability.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant Robin Holloway.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.