

# ARKANSAS COURT OF APPEALS
DIVISION I
№. CV–17–221

ASHLEY HOLLINGER

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN

APPELLEES

OPINION DELIVERED: SEPTEMBER 20, 2017

APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT
[NO. 66FJV-15-278]

HONORABLE JIM D. SPEARS, JUDGE

AFFIRMED

## ROBERT J. GLADWIN, Judge

Appellant Ashley Hollinger appeals the order of the Sebastian County Circuit Court terminating her parental rights to her daughter, D.H., and her son, J.H. On appeal, she argues (1) that reversal is warranted because there was insufficient evidence presented to establish the grounds asserted in support of termination; and (2) that appellee Arkansas Department of Human Services (ADHS) failed to prove that termination of her parental rights (TPR) was in the best interest of her children. We affirm.

## I. *Facts*

This case began on April 15, 2015, when the Fort Smith Police Department requested ADHS's assistance following several arrests, including the arrest of Ashley,[1] after a controlled drug buy in the home where Ashley and her children, D.H. and J.H., were

---

[1]Ashley was arrested and charged with felony possession of a schedule two controlled substance, possession of drug paraphernalia, simultaneous possession of drugs and firearms, and maintaining a premises for drug sales.

living. At the residence, officers discovered marijuana, drug paraphernalia, hydrocodone, and amphetamine. Based on these events, ADHS filed a petition for emergency custody and dependency-neglect on April 20, 2015. In the attached affidavit, ADHS asserted that it had a previous history with Ashley's family dating back to 2012 that included protective-services cases.

The trial court entered an ex parte order for emergency custody on April 20, 2015. On April 27, 2015, the trial court held a probable-cause hearing and entered the resulting order on May 6, 2015. The trial court held that the probable cause that necessitated the removal of D.H. and J.H. continued and that custody should remain with ADHS.

The trial court held an adjudication hearing on June 22, 2015, and in an order that was not filed until September 30, 2015, the trial court adjudicated D.H. and J.H. dependent-neglected based on parental unfitness, threat of harm, and inadequate supervision. The trial court further found that the children were dependent-neglected as a result of Ashley's drug use and her arrest following the discovery of drugs and drug paraphernalia in the home where Ashley, D.H., and J.H. were living. The trial court set the goal of the case as reunification and ordered Ashley to obtain and maintain housing, income, and transportation; to complete parenting classes; to submit to a drug-and-alcohol assessment as well as random drug screens; to submit to a psychological evaluation; to complete domestic-violence classes; and to resolve her pending criminal charges.

A review hearing was held on October 5, 2015, with an order filed on March 2, 2016. The trial court continued the goal of reunification and found that ADHS had made reasonable efforts to achieve that goal. The trial court noted that Ashley had been released

from jail during the review period, had completed the drug-and-alcohol assessment, was attending the recommended outpatient treatment, and had tested negative on her drug screens. Ashley was also attending parenting classes and was complying with the terms and conditions of her criminal sentences pursuant to the trial court's order. The trial court also noted that Ashley had not yet completed a psychological evaluation, ADHS was "between providers," and that any resulting delay should not count against her.

The trial court held a permanency-planning hearing on April 4, 2016, and entered an order on July 5, 2016, setting a concurrent goal of reunification and adoption with TPR. The trial court noted that Ashley was living with her boyfriend, D.J. Jennings (Jennings), and that the pair were fixing up a house in lieu of paying rent. Ashley was not employed and did not have her own transportation. ADHS did note that she had completed parenting classes, had completed a drug-and-alcohol assessment, and was attending the recommended outpatient-treatment program. Ashley resolved her criminal charges and received a suspended sentence, although she was arrested for failure to pay fines and expected to serve time in jail as credit toward her fines.

On July 25, 2016, the trial court held a fifteen-month review hearing and subsequently entered an order on September 15, 2016. Therein, the trial court ordered the goal of the case to be changed to adoption. The trial court found that Ashley was not in compliance with either the case plan or the court orders, noting that she had stopped attending outpatient treatment in December 2015, and upon her release from jail, she had tested positive for amphetamine and methamphetamine. The trial court further noted that Ashley recently had been released from inpatient mental-health treatment at Levi Hospital

in Hot Springs, had not resolved her criminal charges, and had not complied with the terms and conditions of her sentences.[2]

ADHS filed a TPR petition on September 16, 2016. Therein, ADHS alleged that the following grounds supported TPR: failure to remedy; subsequent factors; and aggravated circumstances. ADHS further alleged that TPR was in the best interest of the children. The trial court held a hearing on ADHS's TPR petition on October 24, 2016. Melissa Dancer, ADHS's caseworker who had been assigned to this case since the children entered foster care, presented testimony. She stated that Ashley and Jennings had been staying in a home with another person when the drug arrests that prompted the opening of this case occurred. According to Dancer, Ashley was arrested on multiple charges but was ultimately convicted of two counts of possession of drug paraphernalia. Dancer stated that Ashley's drug of choice was methamphetamine. She stated that in an attempt to remedy Ashley's drug usage, ADHS's case plan required her to gain and maintain sobriety through a drug-and-alcohol assessment and treatment.

Dancer also stated that Ashley had been ordered to attend parenting classes, to gain and maintain stable income, housing, and transportation, and to resolve all her criminal issues. Dancer acknowledged that Ashley had obtained and maintained stable housing since December 2015 and had obtained and maintained stable employment for the last three months. Dancer further stated that Ashley attended parenting classes, completed her drug-and-alcohol assessment, and began outpatient drug treatment at Horizons. Dancer explained

---

[2]The trial court found that Galen Pitts, the children's putative father, failed to present evidence that he established significant contacts with the children, and his parental rights did not attach. The trial court dismissed Pitts, and he is not a party to the instant appeal.

that Ashley did not formally complete the program, however, because she had failed to provide documents related to her NA/AA attendance and that the following May, Ashley had tested positive for methamphetamine and hydrocodone. She also tested positive in a subsequent urine test for benzodiazepine and alcohol. Dancer explained that she had informed Ashley immediately after the positive hair-follicle test that she had to return to a treatment program and provided her with a referral but that Ashley did not go right away. Dancer denied that there were any further services she could offer Ashley to aid in reunification and noted that the case had already been open for nineteen months. Dancer stated that ADHS was concerned about the positive hair-follicle test, as well as two subsequent arrests of Ashley, but then acknowledged that Ashley was attending therapy and was current on all fines in her legal cases.

Regarding the children, Dancer stated that J.H. had treatment needs and had been in non-foster-home settings throughout the case but was currently placed with his sister in a foster home. Dancer explained that J.H. had aggression issues that required treatment and that J.H. had been in acute-inpatient stays and later day-treatment programs. She also explained that J.H. could not handle stress and that anxiety tended to overwhelm him. Despite these issues, Dancer stated that they were not things that would prevent J.H. from being adopted. Regarding D.H., Dancer stated that the thirteen-year-old child exhibited quite a maturity for her age and had no mental-health issues or needs.

Dancer testified that the children's current foster home had expressed an interest in adopting the children, if the children were willing. Dancer admitted that D.H. was of the age that she would need to consent to adoption and opined that the child was not

"completely unwilling or un-open to the idea of being adopted." Dancer stated that she believed it was in both children's best interest to be adopted. She also stated that they would be at risk of harm if returned to Ashley because of the lack of overall stability and pending legal issues.

On cross-examination, Dancer stated that she did not refer Ashley for further drug screens after the May screen to allow time for the drugs to be out of her system. Upon further questioning, Dancer acknowledged that Ashley had a negative hair-follicle test within the last month.

Ashley also testified at the TPR hearing and stated that she had recently moved in with her sister, Felicia Hollinger, because of Jennings's recent positive hair-follicle test. She stated that after learning of the positive test, she ended her relationship with him and removed all her belongings from the home they had shared. Ashley denied having any knowledge that Jennings was using methamphetamine but admitted that she thought he was smoking marijuana. Ashley stated that after the children had been removed from her because of her arrest and drug use, she had quit using drugs for nine months but relapsed in March.

She explained that she spent the first four months of the case in jail, and upon her release, went for the drug-and-alcohol assessment and immediately began attending the recommended outpatient-treatment program—completing the required twelve-week sessions in December 2015. But Ashley admitted that she had never received her certificate of completion because she waited too long to turn in the required paperwork about NA/AA meetings and copies of her prescriptions. Ashley admitted relapsing around March and using methamphetamine for approximately a month. She stated that once she failed the hair-

follicle test, Dancer referred her for another assessment and that she went for her intake appointment in August. Ashley denied using any drugs from the time of the positive screen until she began treatment. She stated that she had been employed at Sonic for several months and that she brought home approximately $380 every two weeks. Ashley admitted that she never told Dancer about her overdose that resulted in her stay at Levi Hospital because Dancer had already told her that she was not going to get another chance to prove herself and have another hair-follicle test because treatment had obviously not helped her. She also stated that Dancer never referred her to inpatient drug treatment, but she did state that the outpatient treatment and attendance at NA/AA helped her to stay clean. Ashley stated that she had visitation with the children every Tuesday and that she never missed a visit through any fault on her part. Ashley reiterated that she just needed a little more time to show her stability so that her children could come home.

The trial court entered an order terminating Ashley's parental rights on December 19, 2016. In the TPR order, the trial court found that ADHS had proved each of the three grounds alleged in its petition. The trial court also found by clear and convincing evidence that termination was in the best interest of the children. Ashley filed a timely notice of appeal on January 9, 2017.

## II. *Standard of Review and Relevant Law*

We review termination-of-parental-rights cases de novo. *Bunch v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 374, ___ S.W.3d ___. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl.

2015); *Bunch*, *supra*. Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Bunch*, *supra*. The purpose of terminating a parent's rights to his or her children is to provide permanency in the child's life when returning the juvenile to the family home is contrary to the child's health, safety, or welfare, and it appears that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3). A heavy burden is placed on a party seeking termination because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Bunch*, *supra*. We will not reverse a termination order unless the trial court's findings were clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*.

III. *Discussion*

A. Proof of Grounds Supporting the TPR Order

A court may order TPR if it finds there is an "appropriate permanency placement plan" for the child, section 9–27–341(b)(1)(A), and further finds by clear and convincing evidence that TPR is in the best interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9–27–341(b)(3)(A). Additionally, there must be clear and convincing evidence to support one or more statutory grounds listed in the Juvenile Code. Ark. Code Ann. § 9–27–341(b)(3)(B).

Proof of only one statutory ground is sufficient to terminate parental rights. *Contreras v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 604, 474 S.W.3d 510. We turn to the first ground found by the court:  the failure-to-remedy ground, codified at Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)*, which provides as follows:

> [t]hat a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

This particular ground requires that (1) the child be adjudicated dependent-neglected, (2) the child be out of the custody of the parent for twelve months, and (3) the parent failed to remedy the conditions that caused the child's removal. *Jackson v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 411, 429 S.W.3d 276.

In the TPR order, the trial court found that Ashley had failed to remedy the cause of her children's removal because she had relapsed after having completed drug treatment, had concealed it from ADHS, and had not completed any further treatment. Ashley argues that these findings are not supported by the evidence adduced at the TPR hearing. Rather, she maintains that the evidence demonstrated that she was sober at the TPR hearing, was participating in drug treatment, and was in compliance with the terms of her criminal sentences.

We disagree. This case was opened due to Ashley's drug use and her maintaining a drug-sale premises. Eleven months into the case, Ashley, by her own admission, relapsed into methamphetamine use. Subsequently, thirteen months into the case, Ashley tested positive for methamphetamine, amphetamine, and hydrocodone. Regarding the drug issues

that caused this case to open, negative drug screens alone were not sufficient to demonstrate a successful remediation of those issues. Although Ashley made some progress on her drug issues during the pendency of this case, she did not, sufficiently demonstrate the capacity to remain drug free.

Despite Ashley's claim that her relapse was not a failure to remedy, but rather an isolated "setback," we note that at the end of the case, Ashley's recently acquired sobriety was fragile; this would have subjected her children to potential instability should she again relapse into drug use which, based on her history, was more than a speculative possibility. Only when she was confronted with a positive test for methamphetamine approximately thirteen months into the case did Ashley begin to take steps toward addressing her drug issues. Although she claimed that she is no longer in a relationship with Jennings, who was also a codefendant in her criminal case, the trial court did not believe that the two were truly separated or that she did not know he was using drugs, noting that Ashley had separated from Jennings the weekend just before the TPR hearing because he had tested positive for methamphetamine. Evidence of parental improvement as TPR becomes imminent, however, will not outweigh other evidence that demonstrates a failure to remedy the situation that caused the children to be removed in the first place. Ark. Code Ann. § 9-27-341(a)(4)(A); *see also Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Further, we note that Ashley did not complete the court-ordered drug treatment.

We hold that the court's finding that appellant failed to remedy her parental unfitness due to her instability is not clearly erroneous. Because ADHS was required to prove only



one statutory ground, we do not address the other two grounds. *Shawkey v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 2, 510 S.W.3d 803.

### B. Children's Best Interests

In determining "best interest," the trial court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential of harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i)–(ii).

Because Dancer testified that she believed both children to be adoptable, despite the troubles faced by J.H., Ashley does not challenge the trial court's finding regarding the likelihood of adoptability. But that is only one factor to be weighed when determining whether TPR is in the children's best interest. To be certain, a natural parent's rights cannot, and should not, be terminated simply because a child is adoptable. The best–interest analysis requires more. *See* Ark. Code Ann. § 9-27-341(b)(3)(A)(i)–(ii). Ashley argues that the trial court erroneously concluded that D.H. and J.H. faced a risk of potential harm if returned to her custody.

A trial court is required to consider only the potential harm to the health and safety of a child that might result from continued contact with the parents and is not required to find that actual harm would result. *See McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005). The potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. But even with such wide latitude allowed in evaluating potential harm, Ashley maintains that there was still insufficient evidence before

the trial court to support a conclusion that D.H. and J.H. faced a substantial risk of harm if returned to her custody.

We disagree and hold that a review of the record does not leave us with a firm conviction that the potential-harm finding was a mistake. At the time of TPR, after eighteen months, Ashley had not demonstrated sufficient sobriety for any meaningful length of time, she had not completed drug treatment, and it was not clear whether she had severed her relationship with a partner who had tested positive for drugs. Although Ashley considers her positive drug test an isolated "setback," we focus not on how often she tested positive, but *when* she tested positive.

Ashley admitted relapsing in March 2016—eleven months after removal of the children—and tested positive in May 2016—thirteen months into the case. Based on those facts, the trial court could not be certain Ashley had made significant material progress toward lasting sobriety. In *Dinkins v. Arkansas Department of Human Services*, 344 Ark. 207, 40 S.W.3d 286 (2001), our supreme court noted that where the mother had been receiving services but had still not managed to comply consistently with her case plan, TPR was appropriate to effectuate the intent of the statute. *Id.* The court gave due deference to the trial court, which had observed the witnesses first-hand. *Id.*

This court has considered a parent's substance abuse as a factor in support of termination. *See Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703; *see also Humbert v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 266, 460 S.W.3d 316. In the present case, Ashley's overall history, including recent events that occurred during the last few months of the case, such as her positive tests for methamphetamine and hydrocodone,

played an integral part in the trial court's decision to terminate Ashley's parental rights. Even though Ashley had completed parts of the case plan and seemed to participate during parts of the case, partial compliance with a case plan does not justify reversal of a termination case if the parent continued to make decisions adverse to the child—in this case, abuse of illegal drugs and positive drug tests. In this case, the completion of portions of the case plan did not achieve the intended result of making Ashley capable of caring for her children. *See Wright v. Ark. Dep't of Human Servs.*, 83 Ark. App. 1, 115 S.W.3d 332 (2003).

The trial court was not required to believe Ashley's self-serving testimony that she had remedied her drug problem and would remain drug free without completing drug treatment. Ashley's relapse after at least eleven months of court supervision demonstrated the potential harm the children would face if returned to Ashley. *See Tillman v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 119, at 4 (stating that the mother's "continued use of drugs showed potential harm to the children"); *Allen v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 288, 384 S.W.3d 7.

Affirmed.

HARRISON and KLAPPENBACH, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.