

# ARKANSAS COURT OF APPEALS

DIVISION III

№ CV–17–639

|  |  |
|---|---|
| CANDACE SOLEE | **OPINION DELIVERED:** NOVEMBER 29, 2017 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV-16-295] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE PATRICIA JAMES, JUDGE |
| APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Candace Solee appeals the May 9, 2017 order of the Pulaski County Circuit Court terminating her rights to five of her six children. Appellant's sole challenge on appeal is to the evidence supporting the trial court's best-interest finding demonstrating the likelihood of adoption. We affirm.

### I. *Facts*

This case began on February 26, 2016, after a truancy hearing for L.A. and T.S., then ages nine and thirteen, respectively, resulted in the trial court's placing a hold on the children. Appellee Arkansas Department of Human Services (ADHS) then took custody of appellant's four additional children, M.A., Z.S.(M), Z.S.(F), and K.M., ages seven, five, four and two, respectively, based on ADHS's assessment that appellant was unable to parent her children effectively or appropriately, specifically regarding issues of parental unfitness based on educational neglect and drug use. ADHS had opened a protective-services (PS) case on

appellant's family in October 2015 because of a true finding of environmental and educational neglect that followed two previous cases between 2009 and 2011.

The trial court granted an order for emergency custody, and on April 20, 2016, the children were adjudicated dependent-neglected through a stipulation that appellant had subjected them to educational neglect and parental unfitness based on truancy and exposing the children to drugs. The trial court found that the children had "vast, different needs" resulting from the children being "left to fend for themselves" and that appellant had to "get a handle on her drug addiction" and engage in "intensive hands-on parenting" during the case.

Within a few weeks, the attorney ad litem filed a motion to modify appellant's visitation because L.A., M.A., and Z.S.(M) were "oppositional and defiant in their behaviors, and require[d] at least two [Division of Children and Family Services (DCFS)] staff members to transport them to visits in Little Rock." The ad litem explained that transporting the children created a risk of harm for both the DCFS staff and the children because the children were at risk of elopement. The ad litem further suggested that Z.S.(M) needed visits by himself with appellant because he would become "out of control" if he did not receive one-on-one attention from her. The trial court granted the ad litem's motion, requiring appellant to cooperate with DCFS in scheduling trips for visitation in the counties where the children resided and to adjust her work schedule to accommodate the separate visitations set up for her with her children.

At the first review hearing on August 10, 2016, appellant testified that she had worked at Fresh Market almost full time since March. She was trying to balance work with

all her case-plan requirements, and she acknowledged that she had been arrested at a staffing for possession of marijuana—although she said it belonged to her sister. Appellant stated that she was attending outpatient drug-treatment therapy and learning coping skills through therapy. The caseworker also testified, saying that L.A. had had several placements since the previous hearing, that he was destructive, and that he was about to be considered a treatment failure. M.A. had also been suspended from school. Appellant was visiting with the children separately according to the modified schedule.

At the permanency-planning hearing on February 6, 2017, one year after the case had opened, the trial court changed the goal of five of the children to adoption, with Z.S.(M)'s goal being changed to permanent placement with his father. The trial court stated that it believed appellant was "playing games" with the drug screens because she had been negative on urine screens and positive on hair-follicle tests.

ADHS filed a termination-of-parental-rights (TPR) petition on February 22, 2017, alleging that TPR was in the best interest of all the children except for Z.S.(M), that the children could find permanency through adoption, that appellant was unfit because she had failed to remedy the issues that caused removal, as well as other issues that had arisen subsequent to the filing of the initial petition, and that further services would likely not result in reunification.

The trial court held a hearing on the TPR petition on April 19, 2017. Multiple witnesses testified, but with respect to the issue on appeal, Jessica Warren, the adoption specialist for ADHS, testified that the children had a "potential" for adoption. She based her opinion on the data-match system at ADHS that takes into consideration certain

characteristics of the children. She did not include Z.S.(M) in the system because he was going to be placed in the permanent custody of his father. Ms. Warren did not specifically discuss the likelihood of adoption—just that there were no factors that would "prohibit" adoption. She did not discuss the children's serious behavior issues and how those behaviors are considered by the computer program.

The trial court found that TPR was in the children's best interest and that ADHS had proved the three grounds alleged against appellant in the TPR petition as evidenced in the May 9, 2017 order. Appellant filed a timely notice of appeal on May 22, 2017.

## II.   *Standard of Review and Relevant Law*

We review TPR cases de novo. *Hollinger v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 458, __ S.W.3d __. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015); *Hollinger, supra.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Hollinger, supra.* The purpose of terminating a parent's rights to his or her children is to provide permanency in the child's life when returning the juvenile to the family home is contrary to the child's health, safety, or welfare, and it appears that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3).

A heavy burden is placed on a party seeking termination because TPR is an extreme remedy in derogation of the parents' natural rights. *Hollinger, supra.* We will not reverse a

termination order unless the trial court's findings were clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*.

The "best interest" finding must be made separate and apart from any statutory grounds that might exist, and this court has reversed a TPR solely on errors made by the trial court in its best-interest findings. *Brown v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 725, 478 S.W.3d 272; *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383; *Cranford v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 211, 378 S.W.3d 851.

Although the TPR is an extreme remedy, parental rights will not be enforced to the detriment of the health and well-being of the child. *Johnson v. Ark. Dep't of Human Servs.*, 78 Ark. App. 112, 82 S.W.3d 183 (2002). When parents seriously fail to provide reasonable care for their children, then the rights of the parent must give way to the best interest of the child. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997).

### III.  *Discussion*

With respect to adoptability, the trial court is required to demonstrate that it considered the evidence presented regarding the children's adoptability, or the court must make a finding that the children's adoptability makes no legal difference. *See, e.g.*, *Brown, supra; Lively, supra.* Here, the three eldest children had behavioral problems that required that they be moved several times, one was about to be considered a therapeutic failure, multiple staff had to transport the children because they were an elopement risk, and their visitation had to be separated from the three youngest children because of the severe

disruption they caused during the visits. Ms. Warren, the adoption specialist, said that she ran the children's characteristics through the data-matching database, but she presented no evidence of how the database factors in specific behavioral problems, such as the severe problems demonstrated by these children. Appellant claims that the evidence adduced at trial that these children were likely to be adopted was insufficient and highly speculative.

Further, while Ms. Warren explained that there were no factors that would "prohibit" adoption, appellant submits that without more, her testimony could simply mean that the children have a greater than zero percent chance of adoption as a permanency plan—merely that adoption was possible. Appellant argues that the probability of them achieving permanency through adoption, in other words, the actual *likelihood* of their adoption, was not demonstrated despite the statutory requirement. *See* Ark. Code Ann. § 9-27-341(b)(3)(A)(i) (trial court must consider the likelihood that the juvenile will be adopted).

Appellant notes the ad litem's conclusion at the end of the TPR hearing that the children needed to be "freed for adoption" so that their "significantly serious" needs can be met in homes by parents who are "invested" in the children. Appellant submits, however, that the children had been in foster care for more than a year, presumably in safe homes with attentive and invested foster parents, yet there was no testimony that the children's behavior had improved. ADHS's report that was submitted for the TPR hearing indicated, in fact, that the three eldest children continued to have behavioral problems, including aggressive behavior toward those in authority, with one of the children, L.A., requiring placement in an acute residential facility for behavioral issues. *Cf. Holloway v. Ark. Dep't of*

*Human Servs.*, 2017 Ark. App. 268, 520 S.W.3d 724 (affirmed despite similar arguments of adoptability, but where caseworker testified extensively about children's improving behavior while in foster care).

Appellant argues that the children being "freed for adoption" is not required for ADHS to continue to address the family's needs. *See* Ark. Code Ann. § 9-27-303(25)(A). Appellant maintains that there was no sound basis on which the trial court's likelihood-of-adoption finding rested. Although the trial court found in its TPR order that it took into consideration the testimony of the adoption specialist in making its finding that adoption was a viable permanency goal for the children, appellant urges that Ms. Warren's testimony was insufficient to support the trial court's finding.

We disagree. Our review of the record reveals evidence regarding the children's adoptability and indicates that the trial court considered this evidence as one factor in its decision regarding TPR. ADHS was not required to prove adoptability by clear and convincing evidence. Adoptability is not an essential element in a termination case; rather, it is merely a factor that must be considered by the trial court in determining the best interest of the child. *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1; *see also* Ark. Code Ann. § 9-27-341(b)(3). There is no requirement that an adoption specialist testify at the TPR hearing or that the process of permanent placement be completed at the time of the TPR hearing. *Fortenberry v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 352. Additionally, there is no requirement to prove this element by clear and convincing evidence or to identify an exact family that, upon TPR, would be willing to adopt the juveniles. *See Reed v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 369, 417 S.W.3d 736.



We hold that the trial court fulfilled its statutory requirement by considering the following evidence of adoptability as presented by Ms. Warren:

> There is a potential for adoption for these children. The factors I took into consideration in making that determination were their age, race, gender and other characteristics such as any physical conditions, mental health, behavioral and any developmental and educational [sic].
>
> We have a data matching system at DHS. I used that system in this case. For a sibling group of five with the ages of 14, 8, 3, 10, and 5 there were 21 adoption resources found with their characteristics. I ran the three oldest individually and the two youngest together.
>
> The results for the two youngest, the 3 and a 5-year-old, there were 256 resources. For the oldest child, the 14–year old, there [were] 79 resources. For the 10–year old there were 94 resources and for the 8-year old there were 111 resources. There aren't any factors that exist that would prohibit adoption in this case.

Based on this testimony, the trial court concluded:

> [ADHS] has an appropriate plan for permanent placement for the juveniles. The appropriate plan is adoption. Ms. Warren testified that she is the adoption specialist assigned to this case. She indicated that each child has the potential for adoption. . . . She said there were no significant barriers to adoption of any child. The Court has taken adoptability into consideration in making its findings today.

Appellant contends that this evidence is insufficient because of the children's behavioral and developmental issues; basically, she argues that the evidence fails to demonstrate the probability of the children achieving permanency through adoption. Her argument sets the bar unreasonably high for the court's consideration of adoptability. As previously stated, ADHS is not required to prove adoptability by clear and convincing evidence. The requirement is merely that evidence be presented and the trial court consider that evidence. Setting the bar higher would unfairly punish children with special needs or developmental disabilities who need permanency—especially if the behavior and development issues are a direct result of the parent's unfitness and inability to properly

parent. *See, e.g.*, *McDaniel v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 263 (holding that even if a child is unlikely to be adopted, it may still be in his best interest to terminate a parent's rights).

The Juvenile Code does not require "magic words" or a "specific quantum" of evidence to support a trial court's finding regarding adoptability. *Sharks v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. It merely requires that if an adoptability finding is made, then evidence must exist to support it. *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28. Evidence that adoptive parents have been found is not required, *see McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005), and neither is evidence that proves the child will be adopted. *Renfro v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 419, 385 S.W.3d 285.

After considering all the relevant factors, including adoptability, we hold that the trial court did not err, based on the children's severe dysfunctions and appellant's unfitness, in finding that it was in the children's best interests to terminate her parental rights. Ms. Warren's testimony and additional evidence explained the children's behavioral history, their adjustment to foster care, and the potential adoptive resources. There is not a requirement that ADHS disprove all possible barriers to adoption, such as behavior issues, with clear and convincing evidence. The trial court properly weighed the evidence and concluded that the juveniles would likely be adopted. *See Blanchard v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 215, 395 S.W.3d 405. Given the high degree of deference that the appellate court gives to the trial court in weighing testimony, it cannot be said that the trial court's adoptability finding was clearly erroneous. When there is evidence that addresses the

likelihood of adoption, as we have here, the requirements of the Juvenile Code are satisfied.

*See Thompson v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 124.

Affirmed.

GLOVER and HIXSON, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.