DAVID M. GLOVER, Judge
Ashley Cole appeals the Dallas County Circuit Court's order terminating her parental rights to her five children: son J.C. (born 9-18-07), son S.M. (born 10-20-10), daughter L.M. (born 5-21-13), son B.P. (born 4-29-15), and son J.P. (born 5-18-16).[1] She contends the circuit court erred in terminating her parental rights because the Arkansas Department of Human Services (DHS) failed to prove termination was in her children's best interest; specifically, she argues there was insufficient evidence of the likelihood of adoption. We affirm the termination.
Facts
The four older children were taken into DHS custody on an emergency basis in January 2016 after allegations of child maltreatment *542 were made regarding J.C., who uses a wheelchair and has a feeding tube.[2] It was reported that Cole had come to Arkansas from Mississippi with the children, but she had failed to begin J.C.'s therapies in Arkansas and had "not been paying good attention to him." During the DHS investigation of these allegations, Cole tested positive for THC; she took the children out of the home in which they had been living but did not take any of J.C.'s medical products; and it was discovered J.C. had missed twenty days of school. When DHS finally located Cole, the home in which she and the children were living had no furniture or food; clothes were strewn about the home; the children smelled of urine, dirt was caked on their faces, and they had head lice; and none of J.C.'s medical equipment was in the home. The circuit court granted DHS an ex parte order of emergency custody; a probable-cause order continuing custody with DHS was also granted. An adjudication order was entered in April 2016; in it, the circuit court noted J.C. had missed an excessive amount of school (20 days), thereby missing his necessary occupational, speech, and physical therapies; Cole had tested positive for THC; J.C.'s medical equipment was not in the home; and the children had head lice. Cole stipulated to those facts and that the children were dependent-neglected based on those facts.
On May 25, 2016, DHS filed a petition for emergency custody of J.P. J.P. was born on May 18, 2016, and DHS took a 72-hour hold on him on May 19; J.P. and Cole both tested positive for amphetamines when J.P. was born at thirty-six weeks. J.P. was taken to Arkansas Children's Hospital when he was born due to palate issues and an inability to keep formula down. An ex parte order of custody for J.P. was entered the same day; a probable-cause order was also entered, continuing J.P.'s custody with DHS. An adjudication order for J.P. was filed on August 15, 2016, adjudicating J.P. dependent-neglected due to his meconium testing positive at birth for methamphetamine and amphetamines and because his siblings were previously adjudicated dependent-neglected in April 2016; Cole stipulated to these facts and these findings. Review orders concerning all five children were entered in August and November 2016, with the orders continuing custody with DHS. A permanency-planning order was entered in February 2017; the goal was placement of the children with a parent, guardian, or custodian.
On May 2, 2017, DHS filed a petition to terminate parental rights. As to Cole, the grounds alleged for termination were twelve months out of custody and failure to remedy conditions that caused removal; other factors; and aggravated circumstances. On May 5, a fifteen-month review order was filed changing the goal of the case from reunification to termination of parental rights. On July 19, 2017, a hearing on DHS's petition to terminate parental rights was held after which the circuit court terminated Cole's parental rights as well as the parental rights of the children's legal fathers. The circuit court terminated Cole's parental rights on all three bases alleged by DHS in its petition.
Sufficiency of Evidence
Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the children. Norton v. Arkansas Dep't of Human Servs. , 2017 Ark. App. 285. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration *543 of the likelihood the juveniles will be adopted and of the potential harm caused by returning custody of the children to the parent. Id. Each step requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. Id.
Appellate review of termination-of-parental-rights cases is de novo, and our inquiry on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. Wallace v. Arkansas Dep't of Human Servs. , 2017 Ark. App. 376, 524 S.W.3d 439. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In resolving the clearly erroneous question, a high degree of deference is given to the circuit court, as it is in a far superior position to observe the parties before it and to judge the credibility of witnesses. Id.
Argument
On appeal, Cole does not challenge the grounds for termination of her parental rights, nor does she make an argument regarding the potential-harm prong of the best-interest analysis. Her argument focuses solely on the circuit court's finding that the children are adoptable. While the likelihood of adoption must be considered by the circuit court, that factor is not required to be established by clear and convincing evidence, Holloway v. Arkansas Department of Human Services , 2017 Ark. App. 268, 520 S.W.3d 724 ; rather, the circuit court must merely consider the likelihood of adoption if parental rights are terminated. Canada v. Arkansas Dep't of Human Servs. , 2017 Ark. App. 476, 528 S.W.3d 874. Setting the bar higher would unfairly punish special-needs children or developmentally disabled children needing permanency-especially if the behavior and development issues are a direct consequence of a parent's unfitness and inability to properly parent. Solee v. Arkansas Dep't of Human Servs. , 2017 Ark. App. 640, 535 S.W.3d 687. Adoptability is not an essential element of proof, and proof of adoptability does not require DHS to provide names of specific adoptive parents or even to provide evidence it has identified such persons at the termination hearing. Canada , supra. The Juvenile Code does not require "magic words" or a "specific quantum" of evidence to support a circuit court's finding regarding adoptability; it only requires that if an adoptability finding is made, evidence must exist to support it. Solee, supra. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. Holloway, supra.
In support of her argument, Cole points to adoption specialist Anissa Ballew's testimony that an adoption-data match for the five siblings as a group indicated twenty-five potential matches, and another data match on J.P. alone indicated over 200 matches, even given evidence of his special needs (testimony at the termination hearing revealed J.P. has heart issues). Ballew testified that, based on those data matches, DHS believed the children are adoptable. However, Ballew also testified that other than J.P., none of the children had any severe medical concerns or behavioral concerns that would hinder their adoption. Cole made no objection to Ballew's testimony and did not cross-examine her. In its termination order, the circuit court stated it specifically considered the likelihood the children would be adopted in terminating Cole's parental rights, specifically Ballew's testimony *544 that adoption-data matches indicated twenty-five matches for a sibling group of five and over 200 matches for J.P. alone.
Cole argues that the inconsistencies in Ballew's testimony clearly indicated Ballew was not familiar with the children's characteristics and that because Ballew was unaware of J.C.'s serious and extensive medical needs, the entirety of her data-match testimony was "wholly unreliable." Cole contends this inaccurate testimony, and the circuit court's reliance on such, mandates reversal on the adoptability prong of the best-interest analysis.
We do not find merit in Cole's argument. The record in this case is replete with evidence of J.C.'s special needs-Cole's lack of attention to those needs was one of the main reasons DHS became involved with her family in the first place. The circuit court heard voluminous testimony regarding J.C.'s special needs, and as the finder of fact, it was the circuit court's responsibility to sort out any contradictions in testimony. Clearly, the circuit court was aware J.C. has special needs. Essentially, Cole wants DHS to prove adoption is likely to occur. However, as discussed previously, DHS is not required to prove adoptability by clear and convincing evidence. There must be evidence presented that the children are adoptable, and it must be shown that the circuit court considered such evidence. The circuit court was entitled to rely on Ballew's testimony regarding adoptability, which it did, as evidenced by its finding in the termination order. The circuit court's finding the children are adoptable was not clearly erroneous.
Cole also argues that the CASA report recommended that S.M., L.M., and B.P.-Miguel Miranda's children with Cole-be placed in an adoptive home together, if possible, and that termination was not in the best interest of L.M., S.M., and B.P. when there was no meaningful effort to place those children with Miranda, who loved them and wanted custody of them. Cole lacks standing to challenge the termination of her parental rights based on alleged violations of Miranda's parental rights, which were also terminated. See Murphey v. Arkansas Dep't of Human Servs. , 2016 Ark. App. 430, 502 S.W.3d 544.
Affirmed.
Gruber, C.J., and Harrison, J., agree.

The parental rights of Miguel Miranda (legal father of S.M., L.M., and B.P.), Shaun Bridge (legal father of J.C.), and John Curtis Porter, Sr. (legal father of J.P.), were also terminated by this order. However, the fathers are not parties to this appeal.

J.P. was not yet born.