Cite as 2026 Ark. App. 136

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-25-232

|  |  |
|---|---|
| CHRISTOPHER WEATHERLY AND DESTINY WEATHERLY<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | Opinion Delivered February 25, 2026<br><br>APPEAL FROM THE GRANT COUNTY CIRCUIT COURT [NO. 27JV-23-88]<br><br>HONORABLE STEPHEN SHIRRON, JUDGE<br><br>AFFIRMED; MOTIONS TO WITHDRAW GRANTED |

### MIKE MURPHY, Judge

Appellants Destiny and Christopher Weatherly appeal the termination of their parental rights to their children, MC1, MC2, and MC3, who were ages six, two, and one when they entered the custody of the Arkansas Department of Human Services (DHS). *Pursuant to Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Rule 6-9(j) of the Rules of the Arkansas Supreme Court and Court of Appeals, individual counsel for both parents filed no-merit briefs and motions to withdraw asserting there are no issues of arguable merit to raise on appeal. The clerk of this court provided Christopher and Destiny with copies of their counsel's briefs and notified them of their rights to file pro se statements of points for reversal. Christopher filed points for reversal; Destiny did not. We affirm the termination of the Weatherlys' parental rights and grant counsel's motions to withdraw.

On August 14, 2023, DHS received a call from the principal at Sheridan Elementary School stating that a mother had been arrested at the school and that there were three young children with nowhere to go.

It was the first day of school. MC1 attended school that day but had not been registered, and Destiny was late to pick her up. When Destiny did arrive, a police officer tried to explain the registration process, and Destiny "began to scream and curse" and acted so erratically that the officer called for backup. Destiny was arrested for disorderly conduct. DHS took custody of the children.

MC2 and MC3 were observed with dirt and grime on their necks, faces, hands, feet, hair, and clothes. MC3 was "soaked in urine" and covered in bug bites. MC2 had a severe diaper rash and a bruised forehead. MC1 was appropriately dressed and groomed. MC1 told DHS that she and her family slept at various houses.

DHS was granted ex parte emergency custody of the children, and on August 25, the circuit court found there was probable cause to continue custody with DHS. The children were adjudicated dependent-neglected on January 8, 2024, due to neglect and parental unfitness. The court found that Destiny posed a safety threat to her children because she could not protect them from harm and was incapable of meeting their immediate needs for supervision, food, and clothing. It further found that Destiny's substance abuse seriously impaired her ability to supervise, protect, or care for her children and that her mental instability, developmental status, or cognitive deficiency seriously impaired her current ability to supervise, protect, or care for her children. Destiny reported to the court at that

hearing that she would test positive for marijuana and methamphetamine.

The court found that Christopher Weatherly was a noncustodial parent who did not contribute to the dependency-neglect of the children. The goal of the case was set as reunification.

The court-approved case plan included foster care, random drug-and-alcohol screenings and assessments, psychological evaluations, random home visits, transportation, home assessments, drug treatment, and counseling. Destiny made little progress.

At the time of the permanency-planning hearing on September 3, 2024, Christopher was incarcerated at the Sheridan Detention Center. Destiny was noncompliant. The goal of the case was changed to termination of parental rights and adoption.

In response to the change in goal, DHS filed a petition to terminate both parents' parental rights. As to Christopher, the petition alleged that he was unfit because, in part, he had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of his children's lives. Concerning Destiny, the allegations included that the children had been out of her custody for more than twelve months, and despite meaningful efforts on behalf of DHS, the conditions that caused removal had not been remedied.

On November 13, the ad litem moved to suspend visitation because the "parents' failure to visit the children on a regular basis has had an adverse effect on the juveniles' emotion state, as well as their behavior." The motion stated that Destiny would cancel visits, which caused MC1 to regress. The motion was granted as to Destiny.

Relevant to the appeal, at the termination hearing, Christopher testified that he was currently incarcerated and serving a twenty-year sentence.

Destiny testified that her children were removed because she got into a verbal altercation with a school resource officer who accused her of being on drugs. She was arrested that day for disorderly conduct and obstructing government operations. She did not have stable housing then, but for the last two months, she has been living in a camper trailer in her friends' yard for $100 a month. It had water, heat, a shower, a bed, and a table that converted into another bed.

She began using meth two weeks after DHS removed her children in August 2023. During the case, she had been admitted to three inpatient drug-treatment facilities but had not completed any of the programs. She left the last one because she thought she "could do more outside." She last used methamphetamine three months before the termination hearing, after the petition to terminate her parental rights had been filed. Although she was no longer using meth, she was still smoking marijuana once or twice a week; she did not have a medical marijuana card. She said she missed visits because she overslept.

The DHS caseworker testified that DHS had offered transportation, psychological evaluations, drug assessments, inpatient substance-abuse treatment, parenting classes, home visits, and family time. The drug assessment recommended inpatient substance-abuse treatment. She said that on the basis of Destiny's description of the camper trailer that she was living in, DHS would not approve the children living there. And she had not been living in the camper long enough for it to qualify as stable housing. She said that Destiny had

attended only seventeen of the sixty-eight visits DHS offered.

The caseworker testified that the children could not safely be returned to Destiny's custody; they would be at risk of harm. The camper was not stable housing, and Destiny was still using drugs, had used drugs recently, had not completed inpatient treatment, and had not provided proof to DHS that she was attending or had attended outpatient treatment. The children were all doing well in foster care, and the foster family desired to adopt them. DHS had also found forty possible families that matched the children's criteria for adoption.

At the conclusion of the hearing, the court found that termination of the parents' rights was in the children's best interest. The termination order was entered on January 23, 2025. It found that DHS had proved all four grounds alleged against Destiny: failure to remedy within twelve months, willful failure to provide significant material support or maintain meaningful contact, unremedied issues arising after the dependency-neglect petition, and aggravated circumstances. DHS alleged, and the circuit court found, two other grounds that applied only to Christopher: failure to remedy by a noncustodial parent and imprisonment.

The order also found that termination of parental rights was in the children's best interest and considered adoptability and potential harm in making that decision. Both parents appealed. Each parent was represented by separate counsel.

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2025). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a

firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health &* *Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Only one ground is necessary to terminate parental rights. *Id.*

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit brief and motion to withdraw if, after studying the record and researching the law, counsel determines the appellant has no meritorious basis for appeal. The brief must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). Additionally, the brief's statement of the case and facts must contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B). In evaluating a no-merit brief, the issue for this court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores*, 359 Ark. 131, 194 S.W.3d 739.

To terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B). *Trogstad v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 443, 609 S.W.3d 661. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

In these no-merit briefs, attorneys for both parties assert that after a conscientious review of the record, they found no issues of arguable merit for appeal.

First, we will address the element common to both parents: the adoptability of the children. Testimony from a DHS caseworker that a child is adoptable is sufficient to support an adoptability finding. *Solee v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 640, 535 S.W.3d 687. Therefore, there can be no meritorious challenge to the circuit court's adoptability finding.

Concerning Christopher specifically, he was sentenced to twenty years' incarceration for residential burglary. The circuit court found that one of the grounds supporting the termination of his parental rights was Ark. Code Ann. § 9-27-341(b)(3)(B)(viii), which provides that parental rights may be terminated when "[t]he parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life." It is the prison sentence itself, not the potential release date, that determines whether

this statutory ground is satisfied. In *Sills v. Arkansas Department of Human Services*, 2018 Ark. App. 9, at 9, 538 S.W.3d 249, 255, we held that five years' imprisonment was a substantial period of time for a child less than two years of age. Here, Christopher's sentence would cover the entirety of all three of his children's minority.

The potential harm of returning the children to Christopher's custody is simply that it is impossible to do so. That the children would have to be in DHS custody until Christopher's release "is the definition of the instability that the termination statute is intended to protect children from." *Sills*, 2018 Ark. App. at 9, at 11, 538 S.W.3d at 256.

We agree with counsel that the decision to terminate Christopher's parental rights is supported by substantial evidence.

Christopher filed pro se points. He argues that the circuit judge had a conflict of interest because he was both the prosecutor in his criminal case and the judge who presided over his divorce from Destiny. He argues that the judge should have recused himself from the case. He also argues that his parents are willing to adopt the children. These points are not preserved for review.

Arkansas law requires that recusal arguments be raised before the circuit court to preserve them for appellate review. In *McCormick v. Arkansas Department of Human Services*, the parent made the argument "that the court was condescending to her and that comments made at the termination hearing tainted the entire judicial opinion," but we held that the argument was not preserved for our review because she "never filed a motion for recusal or raised any bias issue at any point during the case." 2020 Ark. App. 44, at 8, 594 S.W.3d 115,

120. This is also why Christopher's point that his parents were an option to adopt his children fails. This argument is functionally similar to a less-restrictive-placement argument, which must also be preserved for consideration. *See Barnoskie v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 323, at 7, 689 S.W.3d 470, 475 (holding that a father failed to preserve for appellate review his argument that termination of his parental rights was not in child's best interest due to circuit court's alleged failure to consider placement with another relative as a less restrictive option where the father failed to make its less-restrictive argument to the circuit court).

Regarding Destiny, we likewise hold that there is no issue of arguable merit. Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)* provides that the following ground may support termination of parental rights:

> [t]hat a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

This particular ground requires that (1) the child be adjudicated dependent-neglected, (2) the child be out of the custody of the parent for twelve months, and (3) the parent failed to remedy the conditions that caused the child's removal. *Jackson v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 411, 429 S.W.3d 276.

Here, the children were adjudicated dependent-neglected in part due to Destiny's drug use. Destiny never completed any treatment programs despite the services offered by DHS and, in fact, continued to use methamphetamine even after DHS petitioned to

terminate her parental rights. The circuit court found that Destiny's drug use has not been remedied and poses a continued safety risk to the children, and this ground is supported by the record. Continued drug use likewise demonstrates potential harm sufficient to support termination of parental rights. *Hernandez v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 449, at 17, 588 S.W.3d 102, 113.

Affirmed; motions to withdraw granted.

GLADWIN and WOOD, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for separate appellant Christopher Weatherly.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for separate appellant Destiny Weatherly.

*Marc D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain* and *Linda J. Hamilton*, attorneys ad litem for minor children.